473 F.2d 1228
 JETCO ELECTRONIC INDUSTRIES, INC., and Thomas H. Doss,
Plaintiffs-Appellants,
v.
Robert F. GARDINER, Individually and d/b/a Gardiner
Electronics Company and Engineers Testing
Laboratories, Inc., Defendants-Appellees.
 No. 72-2061.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 8, 1973.
Rehearing and Rehearing En Banc Denied March 21, 1973.
 
 W. R. Malone, Huntsville, Tex., C. Donald Gunn, Houston, Tex., for plaintiffs-appellants.
 Louis T. Pirkey, Karl C. Hoppess, Houston, Tex., Riney B. Salmon, II, Phoenix, Ariz., for Gardiner.
 James Greenwood, III, Houston, Tex., for Engineers Testing.
 Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 This appeal from the district court's order dismissing appellants' cause of action against one of several defendants,[1] presents, inter alia, an interesting question concerning the limits imposed by due process upon the exercise of personal jurisdiction by a federal court sitting in a diversity case. After a careful review of the policies and controlling precedents in this area of law, we reverse the judgment below.
 
 
 2
 Appellee Engineers Testing Laboratories, Inc. (ETL) is an Arizona corporation, with its principal place of business in Arizona. It has no office in Texas nor does it have any employees, agents or servants in Texas on a regular basis. It is not qualified to do business in Texas nor has it sought to so qualify. It has had only two jobs in Texas within the past five years. Both jobs involved soil investigation for building foundations in El Paso during the summer of 1970. Neither job was connected with this suit. The fees for these two jobs totalled about $2,500, less than two-tenths of one percent of ETL's 1970 gross receipts. Appellants Jetco Electronic Industries, Inc. and Thomas H. Doss are Texas residents engaged in the business of manufacturing and selling treasure hunting devices under the trade names "Jetco" and "Relco." Robert F. Gardiner, a defendant below but not a party to this appeal, is an Arizona resident doing business as Gardiner Electronics Company, which manufactures and sells a competitive treasure hunting device. In December 1969 or January 1970, Gardiner purchased treasure hunting devices from a number of his competitors, including Jetco and Doss, and conducted a test to compare the performance of his device with that of his competitors'. The test consisted of burying an object some measured distance under the ground and operating each device over the object to see whether it would detect the object. He then paid ETL $85.00 to duplicate this test and "authenticate" the results already obtained. An ETL employee conducted the test in March 1970, employing the same techniques Gardiner used in his test. ETL prepared a report of the test procedures and results and sent it to Gardiner. The report stated that a Gardiner device would detect a penny buried as deep as five and one-half inches, but that a Jetco device with a six-inch search coil would detect a penny to a depth of only two inches and that a Jetco with a twelve-inch search coil showed no response to a penny buried deeper than one-half inch. The report claimed that the Relco devices were likewise inferior to Gardiner's devices.
 
 
 3
 Gardiner advertised his treasure hunting devices in several magazines of widespread circulation. Some of these advertisements invited the reader to send for a free catalog containing "comparison tests of different makes." Some twenty thousand persons are said to have responded to these advertisements, and Gardiner sent each of them a catalog which incorporated ETL's report of the test procedures and results-complete with brand names of the devices tested-and which contained a conclusion extracted from an earlier ETL report to Gardiner.[2] ETL had nothing to do with the preparation or dissemination of this catalog.
 
 
 4
 Jetco and Doss sued ETL, Gardiner and Gardiner Electronics in the Southern District of Texas, alleging that publication of the catalog containing ETL's test results caused appellants to lose sales. Appellants' cause of action against ETL was based on three theories: first, that ETL negligently tested the devices and proximately caused appellants' loss of sales; second, that ETL and Gardiner jointly libeled appellants; third, that ETL and Gardiner jointly committed the common law tort of disparagement of property by preparing and circulating the test results. Because the trial court's subject matter jurisdiction rested on the diverse citizenship of the parties, obtaining in personam jurisdiction over the Arizona defendants required compliance with the Texas "long arm" jurisdiction statute, Article 2031b, Vernon's Tex.Rev.Civ.Stat.Ann.[3] On March 10, 1972, the trial court granted ETL's motion to dismiss appellants' cause of action against it for failure to state a cause of action and for failure to comply with the Texas long arm statute. The instant appeal was taken from that order. Several months later, the trial court entered an agreed judgment disposing of appellants' claims against the other two defendants, Gardiner and Gardiner Electronics. On this appeal ETL argues that the dismissal was proper, because appellants did not prove facts sufficient to invoke the Texas long arm statute and because the exercise of long arm jurisdiction over ETL would offend due process.
 
 
 5
 * Before reaching the merits of this controversy, we must decide whether the district court's March 10, 1972, order dismissing appellants' suit against ETL is appealable. With several exceptions not relevant here, this Court's appellate jurisdiction extends only to final orders. 28 U.S.C. Sec. 1291. In a multiparty lawsuit such as this one, an order is final only if it meets one or the other of two conditions: (1) it must adjudicate the claims or the rights and liabilities of all the parties, or (2) it must expressly determine that there is no just reason for delay and expressly direct the entry of judgment. Rule 54(b), F.R. Civ.P. The March order dismissing appellants' suit against ETL meets neither of these conditions: It said nothing about appellants' rights as against the other two defendants, Gardiner and Gardiner Electronics; and it contained nothing faintly resembling a Rule 54(b) certificate. That order is thus not a final judgment under Rule 54(b). Johnson v. Hendrickson, 5th Cir. 1972, 469 F.2d 694. Nor was the later order entering an agreed judgment disposing of appellants' claim against Gardiner and Gardiner Electronics a final judgment under Rule 54(b)-it contained no certificate, and it did not adjudicate appellants' rights as against ETL. Nevertheless, these two orders, considered together, terminated this litigation just as effectively as would have been the case had the district judge gone through the motions of entering a single order formally reciting the substance of the earlier two orders. Mindful of the Supreme Court's command that practical, not technical, considerations are to govern the application of principles of finality, Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L. Ed.2d 199 (1964); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), we decline appellee's invitation to exalt form over substance by dismissing this appeal. We hold that the March order dismissing appellants' suit against ETL is, under the circumstances of this case, within our appellate jurisdiction. Therefore, we turn to the merits.II
 
 
 6
 In deciding whether a state jurisdictional statute confers jurisdiction over a nonresident defendant in a federal diversity suit, two avenues of inquiry must be followed. First, it must be determined that the defendant is in fact amenable to service under the state statute; state law of the forum controls this question. Barrett v. Browning Arms Co., 5th Cir. 1970, 433 F.2d 141; Tetco Metal Products, Inc. v. Langham, 5th Cir. 1968, 387 F.2d 721. If the state statute has been complied with, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due process. Barrett, supra; Tetco, supra; Arrowsmith v. United Press International, 2nd Cir. 1963, 320 F.2d 219. Plaintiff has the burden of proving that defendant is amenable to process under the forum state's jurisdiction statute. Tetco, supra; 5 Wright & Miller, Federal Practice and Procedure Sec. 1351 at 565. Under many state long arm statutes, like that of Texas, amenability to service turns on whether defendant has "done business" or "committed a tort" in the forum; thus the threshold jurisdictional question often puts in issue the facts alleged as a basis for relief. Plaintiff is not, however, required to prove his case by a preponderance of the evidence in order to show that the forum's jurisdictional statute is satisfied. Rather, plaintiff meets his burden by establishing merely a prima facie cause of action. O'Hare International Bank v. Hampton, 7th Cir. 1971, 437 F.2d 1173; United States v. Montreal Trust Co., 2nd Cir., 358 F.2d 239, cert. denied 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); 4 Wright & Miller, Federal Practice and Procedure Sec. 1068 at 250.[4] Imposing any greater burden on plaintiff at this early stage would lead to premature and unnecessary adjudications having no res judicata effect on the merits. Thomas v. Furness (Pacific) Ltd., 9th Cir. 1948, 171 F.2d 434, cert. denied, 337 U.S. 960, 69 S.Ct. 1522, 93 L.Ed. 1759 (1949).
 
 
 7
 The Texas long arm statute provides that one who "does business" in the state is amenable to process in suits arising from such business. "Doing business' includes entering into a contract to be performed in whole or in part within the state, and the commission of a tort "in whole or in part" within the state. Since this suit arises out of neither of ETL's contractual contacts with Texas (the two soil testing jobs in 1970), appellants were obliged to make a prima facie showing that ETL committed a tort in whole or in part in Texas.[5]
 
 
 8
 In our view, appellants established a prima facie case under at least two theories, negligence and libel. With respect to the former, there is no real controversy at this stage as to either damages or ETL's commission of a negligent act. There was ample proof that the ETL employee conducting the test was unskilled in the operation of treasure hunting devices, that the devices may have been damaged during the tests, and that the tests were performed carelessly and were possibly prone to bias. There is considerable dispute, however, over the question of causation. ETL argues that the test results that it prepared were so severely edited before they were published in Gardiner's catalog that, regardless of whether it was negligent in conducting the test, the report appearing in the catalog was not the report it prepared, and thus that its negligence was not a cause in fact of appellants' injury. We take a more restrictive view of Gardiner's cut-and-paste job, however. True, Gardiner omitted from the catalog ETL's dry and somewhat technical discussion of the test procedures, but anyone reading the catalog would have known that the devices were tested by operating them over objects buried at successively greater depths. Gardiner also added to the ETL report a conclusory paragraph from an earlier ETL report, which stated that Gardiner devices were "superior to others tested." But again, this merely restated the obvious message conveyed by the chart of comparative test data. On the other hand, the most damaging part of the ETL report, the chart itself, was included in the catalog virtually unchanged. Gardiner's modifications were, in other words, immaterial.
 
 
 9
 Failing in its cause-in-fact argument, ETL next contends that it could not reasonably have foreseen that Gardiner's competitors might suffer injury as a result of a negligently conducted test, because it had no reason to believe that Gardiner would distribute the test results. But to accept this claim is to ignore commercial realities. Touting a product by displaying the imprimatur of an "independent testing laboratory" is a widespread and well known advertising technique. Surely ETL did not believe that Gardiner was acting out of idle curiosity when he offered to pay ETL $85.00 to "authenticate" test results that he had already obtained. On the contrary, ETL knew, or at least should have known, that the test results it supplied would find their way into Gardiner's advertising literature. In short, there was evidence tending to establish that ETL's negligence was a proximate cause of appellants' losses.
 
 
 10
 Secondly, we believe that appellants made a prima facie case of libel. In Texas, defamation is defined by statute[6] and the Texas courts hold that that definition may not be altered by decision. Times Pub. Co. v. Ray, 1 S.W.2d 471 (Tex.Civ.App.-Eastland 1927); Deen v. Snyder, 57 S.W.2d 338 (Tex.Civ.App.-Fort Worth 1932, no writ). The test report, by stating that appellants' devices could not detect a penny buried more than one-half inch, at best conveyed the message that appellants were incompetent manufacturers of treasure hunting devices and, at worst, implied that appellants' offering their devices for sale was a fraud on the treasure hunting public. Such statements could obviously injure appellants' reputation and expose them to financial injury. Thus, the Texas definition of defamation was satisfied. See Bell Pub. Co. v. Garrett Engineering Co., 141 Tex. 51 170 S.W.2d 197 (Tex.Comm.App.1943); see generally Texas Plastics, Inc. v. Roto-Lith, 5th Cir. 1958, 250 F.2d 844. Moreover, at least with respect to Jetco, the test results mentioned appellant specifically by name, unlike the case of Newspapers, Inc. v. Matthews, 161 Tex. 284, 339 S.W.2d 890 (Tex.1960).[7] Finally, what we have seen above with respect to the causation element of the negligence case applies equally to ETL's argument that it cannot be held responsible for Gardiner's dissemination of the catalog because ETL did not know that Gardiner would distribute the test results and because Gardiner edited the results before printing them in the catalog.
 
 III
 
 11
 Having determined that appellants made a prima facie showing that ETL "committed a tort in whole or in part" in Texas, thereby satisfying the Texas long arm statute, we must now decide whether due process permits the district court to exercise in personam jurisdiction over ETL in this case. For, although Article 2031b represents an effort by Texas to exploit to the fullest the expanding limits of in personam jurisdiction, Atwood Hatcheries v. Heisdorf & Nelson Farms, 5th Cir. 1966, 357 F.2d 847, due process nevertheless imposes some restraints on a state's assertion of jurisdiction over a nonresident defendant. "The island of Tobago still may not impose its will upon the whole world." M. Cardozo, The Reach of the Legislature and the Grasp of Jurisdiction, 43 Cornell L.Q. 210, 213 (1957), quoted in Coulter v. Sears, Roebuck & Co., 5th Cir. 1970, 426 F.2d 1315, 1317. The governing principle is the fairness of subjecting a defendant to suit in a distant forum. Only if the nonresident defendant has such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,"' International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945), or if the defendant has performed some act "by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), may the forum, consistently with due process, extend its long arm to embrace it.
 
 
 12
 When a nonresident defendant introduces a product into interstate commerce under circumstances that make it reasonable to expect that the product may enter the forum state, the forum may assert jurisdiction over the defendant in a suit arising out of injury caused by the product in the forum, if the defendant's other activities within the forum, even though wholly unrelated to the suit, satisfy the minimum contacts requirement. Coulter v. Sears, Roebuck & Co., 5th Cir. 1970, 426 F.2d 1315; Eyerly Aircraft Co. v. Killian, 5th Cir. 1969, 414 F.2d 591. The foregoing discussion has revealed that it is reasonable to charge ETL with knowledge that Gardiner would introduce the test results, materially unchanged, into interstate commerce in his advertising literature. Moreover, we hold that ETL's unrelated contacts with Texas-the 1970 soil tests in El Paso-are sufficient to sustain the exercise of jurisdiction in this case. Although ETL points to the fact that these jobs produced less than two-tenths of one percent of its gross receipts in that year, the dollar volume of a defendant's business within the forum is not, in our view, the controlling criterion. There is no compelling reason to make a question of due process turn on the state of defendant's balance sheet. Rather, the issue is fairness; and under the circumstances of this case, it is abundantly fair to require ETL to defend this suit in Texas. First, it should be no more inconvenient to prepare for an appear at a trial in Texas than it was to send employees to Texas for the soil investigations. Secondly, in performing these jobs in Texas, ETL enjoyed the potential benefits and protections of Texas law. At any time, it could have gone into a Texas court to protect not only its rights conferred by the contracts with its Texas clients, but also those rights created by the numerous ancillary arrangements that assuredly attended those and most other modern business transactions. Admittedly, ETL's contacts with Texas were neither as "substantial" nor as "continuous" as those of the defendants in Eyerly and Coulter, supra.[8] Nevertheless, applying "traditional notions of fair play and justice," we conclude that due process will not be offended by the district court's exercise of jurisdiction over ETL under the circumstances of this case.
 
 
 13
 In summary, we hold that appellants established a prima facie case of libel and of negligence against ETL, and that the district court may assert jurisdiction over ETL under the Texas long arm statute. Accordingly, we reverse the judgment below and remand the case for further proceedings.
 
 
 14
 Reversed and remanded.
 
 JOHN R. BROWN, Chief Judge (concurring):
 
 15
 I concur fully in the result and in all of Judge Thornberry's excellent opinion except as to the theory of negligence. I would put reversal on libel (and his explication of causation and publication) and thus avoid the significant element of duty. Duty is owed by a testing agency to its client. But I doubt that it owes any duty to third persons wholly unrelated to the client, indeed, as here competitors of the client. The law may well impose restraints on what the tester does for the client-just as we do here on the theory of libel-but these are for an affirmative invasion of some protected right of the victim, not on the breach of a duty by the actor toward the stranger.
 
 
 
 [1]
 We discuss the appealability of this order infra
 
 
 [2]
 The paragraph lifted from the earlier report stated that the Gardiner device was "superior to the other devices tested," but did not say whether the earlier test dealt with the same brands tested in 1970
 
 
 [3]
 Article 2031b Sec. 3 states:
 [As to] any foreign corporation . . that engages in business in this State, . . . and does not maintain a place of regular business . . . or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business . . . shall be deemed equivalent to an appointment . . . of the Secretary of State of Texas as agent upon whom service of process may be made in any [such] action, suit or proceedings arising out of such business done in this State. . . .
 Article 2031b Sec. 4 provides that ". . . any foreign corporation . . . shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."
 
 
 [4]
 Of course, plaintiff must still prove the jurisdictional facts at trial by a preponderance of the evidence, if the court's subject matter jurisdiction is challenged. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)
 
 
 [5]
 It is immaterial that the tortious act occurred outside the state, for it is well established that the statute extends to injury occurring within the state as a result of a wrongful act committed outside the state. Eyerly Aircraft Co. v. Killian, 5th Cir. 1969, 414 F.2d 591; Hearne v. Dow-Badische Chemical Co., S.D.Tex.1963, 224 F.Supp. 90
 
 
 [6]
 Article 5430, Tex.Rev.Civ.Stat.Ann.:
 A libel is a defamation expressed in printing or writing, or by signs and pictures or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of anyone, or to publish the natural defects of anyone, and thereby expose such person to public hatred, ridicule, or financial injury.
 
 
 [7]
 Whether readers of the catalog would associate appellant Doss's name with the trade name "Relco" will be a question of fact at trial. Newspapers, Inc. v. Matthews, 339 S.W.2d 890 (Tex.1960)
 
 
 [8]
 In Eyerly, the defendant's activities between 1962 and 1967 included (1) sales and deliveries of amusement devices and parts directly into the state, (2) the extension of credit in the state, (3) the retention of liens on items sold, (4) the filing of such liens with state and county authorities, (5) the servicing of machines in the state, and (6) the solicitation of business in the state. In Coulter, the third-party defendant had regularly marketed its products in Texas