**DLJ PROPERTIES/73, Appellant,**

v.

**EASTERN SAVINGS BANK, Appellee.**

**No. 4956.**

Court of Civil Appeals of Texas, Eastland.

March 24, 1977.

Rehearing Denied April 28, 1977.

---

John W. Davidson, Terry Topham, Sawtelle, Goods, Davidson & Troilo, San Antonio, for appellant.

James D. Baskin, Jr., P. H. Swearingen, Jr., C. M. Montgomery, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, for appellee.

McCLOUD, Chief Justice.

DLJ Properties/73, a New York limited partnership, sued Eastern Savings Bank, a New York corporation, in Bexar County, Texas, for specific performance and damages resulting from Eastern's failure to fund a permanent loan in connection with the construction of an apartment project in San Antonio, Bexar County, Texas. The suit is based upon a Tri-Party Agreement dated November 27, 1973, originally entered into by Richard C. Strauss of Dallas, Texas, as borrower; Cousins Mortgage and Equity Investments, a Georgia unincorporated business trust, as construction lender; and, The Bronx Savings Bank of New York, New York, as permanent lender. Strauss assigned all of his rights under the agreement to plaintiff, DLJ, however, Strauss remained personally liable for completing construction of the apartment project pursuant to the agreement. Strauss filed a plea of intervention seeking specific performance and damages against Eastern. The Bronx Savings Bank is one and the same corporation as Eastern Savings Bank.

Defendant was served under the Texas "Long Arm" Statute, Article 2031b, Vernon's Ann.Tex.Civ.Stat., and filed a special appearance as authorized in Rule 120a, T.R. C.P., for the sole purpose of objecting to the jurisdiction of the court. The trial court sustained defendant's contention and dismissed plaintiff's suit. We reverse and remand.

On April 2, 1973, prior to the Tri-Party Agreement, The Bronx Savings Bank, now doing business as Eastern Savings Bank, executed a commitment letter, subsequently amended, to Crawford-Strauss properties. This commitment was later issued to Richard C. Strauss, individually, by addendum. In the commitment, defendant

agreed, subject to certain terms and conditions, to make a permanent first mortgage loan, "covering the fee simple title" to the San Antonio property, in an amount not to exceed $2,175,000. The commitment was incorporated into and made a part of the Tri-Party Agreement sued upon by plaintiff. The agreement provided that Strauss, owner of the land on which the apartments were to be located, desired to borrow money for the construction and permanent financing of a 184-unit apartment project, and that the construction of the apartments were to be in accordance with plans and specifications which had been approved by the construction lender and the permanent lender. In reliance upon the execution of the agreement the construction lender made a construction loan to Strauss. Defendant agreed, subject to the provisions of the Tri-Party Agreement, to buy from the construction lender the construction loan.

We must determine whether the nonresident defendant is amenable to process under the Texas "Long Arm" Statute, Article 2031b, supra, and if so, whether the exercise of personal jurisdiction over the defendant is consistent with the requirements of due process of law under the United States Constitution. *Pizza Inn, Inc. v. Lumar,* 513 S.W.2d 251 (Tex.Civ.App.—Eastland 1974, writ ref. n.r.e.); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973); *Atwood Hatcheries v. Heisdorf & Nelson Farms,* 357 F.2d 847 (5th Cir. 1966).

The Texas "Long Arm" Statute provides in Section (3) that a foreign corporation that engages in business in this state without maintaining a place of regular business in the state or a designated agent upon whom service may be made is deemed to have appointed the Secretary of State of Texas as agent upon whom service of process may be made in any suit arising out of such business done in this state. Section 4 provides:

"For the purpose of this Act, and without including other acts that may constitute 'doing business', any foreign corporation, joint stock company, association, partnership, or nonresident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

The defendant entered into a contract with a Texas resident, Richard C. Strauss, which was to be performed in part by either Strauss or the defendant in Texas. The commitment required Strauss to furnish an independent appraisal of the property to be made by one of two specified San Antonio appraisers. The defendant's consulting engineers were expressly granted the right to make periodic inspections of the building site. The commitment expressly provided for an inspection by a "member of the bank." Strauss was obligated to furnish defendant a "survey of the Premises" by a licensed surveyor "showing no encroachment on the Premises or by said improvements on adjoining property." The commitment letter provided that a financing agreement under the Uniform Commercial Code, pledging the personal property used in the project, be made and filed.

■ Strauss conveyed the real property on which the apartments were to be located to plaintiff, and assigned his rights under the Tri-Party Agreement to plaintiff. Defendant consented to the assignment. Plaintiff and Strauss entered into a construction contract with Strauss as general contractor to build the apartments. We do not think the assignment by Strauss to plaintiff, a nonresident, removed the contract controversy from the reach of Section 4 of Article 2031b. Defendant satisfied the requirements of Section 4 and was thus doing business in Texas in connection with the Tri-Party Agreement. We have found no case in point, however, we feel the assignment of the contract did not remove defendant from the grasp of the Texas "Long Arm" Statute.

The trial court had jurisdiction over the defendant if assertion of jurisdiction does not exceed federal constitutional limitations.

Our Supreme Court in *O'Brien v. Lanpar Company,* 399 S.W.2d 340 (Tex.1966) suggested that three basic factors should coincide if jurisdiction over a nonresident corporation is entertained:

" ' . . . (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.' "

See also: *International Shoe Company v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In the instant case, the defendant's officers and representatives purposefully came to Texas on several occasions to inspect the apartment project during construction. The commitment letter, which became a part of the Tri-Party Agreement, expressly provided for such inspections which were connected with defendant's obligation to fund the permanent loan. The real property and improvements subject to the contract are located in Texas. The general contractor, Strauss, who built the apartments is a resident of Texas. The real estate appraiser who appraised the property resides in Texas. The record reflects that defendant at the time of the hearing had 14 conventional loans in Texas totaling approximately 19 million dollars which were secured by Texas real estate.

We hold the evidence conclusively establishes that defendant purposefully came to Texas in connection with the Tri-Party Agreement and the cause of action asserted arises out of that agreement. The required "minimal contact" with Texas was established and the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Defendant's contacts with Texas were deliberate, rather than fortuitous.

The judgment of the trial court is reversed and the cause remanded.