GODBOLD, Circuit Judge,
dissenting in part and concurring in part:
I dissent from the majority’s decision because the court lacks power to reach the merits. Though the court has subject-matter jurisdiction under the general jurisdiction statutes, the court lacks personal jurisdiction because service was not proper under the Texas long-arm statute. As to the special jurisdictional provision of the Securities Exchange Act of 1934, § 27 does not apply to this action.
To facilitate comparison of my views with the majority’s, I will follow the structure of the majority’s opinion. I wish to stress, however, that the majority analyze jurisdiction and venue under two separate lines of statutory authority. One line is the general jurisdiction and venue statutes, the other the special jurisdictional provision of the Securities Exchange Act. Of course, jurisdiction need be present' and venue proper under only one line of authority for the court to reach the merits, but it is necessary to keep the two lines of authority separate.
I. Jurisdiction
A. Subject-matter jurisdiction under the general statutes.
I agree that there is subject-matter jurisdiction. There is a federal question, there is diversity, and the amount in controversy exceeds 110,00o.[1]
*1288 B. Personal jurisdiction under the Texas long-arm statute.
The federal rules authorize service “under the circumstances and in the manner” prescribed by the long-arm statute of the state in which the district court sits. Fed. R.Civ.P. 4(e); see Fed.R.Civ.P. 4(d)(7). The Texas long-arm statute provides for service on a nonresident natural person doing business in Texas in any action arising out of such business. Tex.Civ.Stat. art. 2031b § 2. “Doing business” is defined to include entering into a contract to be performed in whole or part in Texas or the commission of a tort in whole or part in Texas. Id. § 4. Courts have often characterized this statute as an effort by the Texas lawmakers to provide personal jurisdiction to the full extent due process allows. E. g., Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1234 (C.A.5, 1973).
The due process inquiry into personal jurisdiction is centrally concerned with the relationship among the defendant, the forum, and the litigation. Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683, 698 (1977). The interests of the forum state and of the plaintiff in the action’s proceeding in that forum should be considered. Kulko v. Superior Court,-U.S. -, 98 S.Ct. 1690, 56 L.Ed.2d 132, 141 (1978). But due process essentially requires that the defendant have such contacts with the forum state as make it reasonable, in the context of our federal system of government, to require the defendant to defend the particular suit brought there. Whether it is reasonable depends upon the nature and quality of the defendant’s activity. International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95, 104 (1945). The activity must show that the defendant has purposefully availed himself of the benefits and protection of the forum state’s laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958).
In this case due process would not allow a Texas court to exercise personal jurisdiction over the defendant. First, the defendant has not purposefully availed himself of the benefits and protection of Texas law. Second, the defendant’s only contacts with Texas are the effects of its regulation that were felt in Texas, and these effects are of a different nature and more attenuated quality than will support personal jurisdiction. Third, the State of Texas lacks any interest in this action’s proceeding in a Texas forum.
1. Benefits and protection of the forum state’s laws.
Due process requires that the defendant have purposefully availed himself of the benefits and protection of Texas law. The majority speculate that this requirement should not be understood literally but assert that in any event the requirement has been met. I believe the requirement means what it says. And the majority’s assertion that in any event the requirement has been met lacks substance.
Recent cases affirm the vitality of the requirement that the defendant have purposefully availed himself of the benefits and protection of the forum state’s laws.[2] The majority argue the requirement means only that the plaintiff’s unilateral activity is insufficient to support personal jurisdiction over the defendant. Certainly the requirement expresses this notion, see Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298, but the language of benefits and protection is not surplusage. Rather it embodies the idea that it is in part the defendant’s enjoyment of the benefits and protection of a state’s laws that makes *1289 it fair to require the defendant to appear in the state’s courts. See International Shoe Co. v. Washington, 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103. The Supreme Court has treated the language of benefits and protection as a literal requirement. For example, in Kulko the Court specifically examined whether the defendant had enjoyed the benefits and protection of the forum state’s laws and found he had not. -U.S.-, 98 S.Ct. at 1698 & n. 7, 56 L.Ed.2d at 132 & n. 7.
The majority say that even if the requirement means what it says it has been met. In part they speculate:
If Great Western had failed to comply with the Idaho takeover law, and the Idaho officials had obtained criminal sanctions, no doubt the state officials would have expected Texas to honor those criminal judgments.
But Idaho could not obtain criminal judgments without first obtaining personal jurisdiction over the criminal defendants, and once it had personal jurisdiction Idaho could enforce the judgments without Texas having to honor anything. At most Texas’s cooperation would be limited to Idaho’s seeking extradition of the criminal defendants under the United States Constitution, art. 4, § 2, cl. 2, on the ground they are “fugitives,” or under the Uniform Criminal Extradition Act on the ground that, though not fugitives, the defendants are charged with committing an act “intentionally resulting in crime” i.n Idaho. Tex.Code Crim. Proc. art. 51.13, § 6. Perhaps this provision would apply to the hypothetical prosecution by Idaho. Nevertheless the possibility that sometime in the future a state may seek extradition of criminal defendants does not cause officials of the putative demanding state to be at the present time purposefully availing themselves of the benefits and protection of the other state’s laws.[3]
2. Nature and quality of defendant’s contacts.
Due process requires that the nature and quality of defendant’s contacts with the forum state be such that it is reasonable to require the defendant to defend the particular suit brought there. Because defendant has conducted no activities in Texas, defendant’s only possible contacts are the effects of Idaho’s regulation felt by Great Western in Texas. The Supreme Court’s recent decision in Kulko is instructive. The state court had justified its exercise of jurisdiction over a nonresident defendant in an action for child support by relying on the defendant’s having caused an "effect in the state. This is similar to the majority’s reliance upon the defendant’s having caused an effect in Texas. In Kulko the Supreme Court concluded that jurisdiction based solely on causing an effect in the state was unreasonable where the cause of action arose from neither the defendant’s causing physical injury in the state nor his commercial transactions in interstate commerce.[4] The effect alone was an insufficient contact. Although Kulko itself dealt with a different factual setting, the reasoning in the opinion leads to the conclusion that in this case jurisdiction based solely on causing *1290 an effect is also unreasonable. As in Kul-ko, today’s case concerns neither tortious conduct nor commercial transactions on the defendant’s part.[5] Of course, the defendant’s activity, whatever its situs, ultimately impacted on the plaintiff’s commercial activity. Idaho’s regulation affected Great Western’s tender offer. But the due process issue turns on the nature and quality of the defendant’s contacts in the forum, not the plaintiff’s activity in the forum and elsewhere. Idaho’s contacts in Texas have a different nature and a more attenuated quality than support jurisdiction under the minimum-contacts case law[6].
3. The state’s interest. “
The due process analysis should also consider the interest of the forum state. In this case -Texas lacks any interest that would justify the exercise, of. its jurisdiction. The nature of defendant’s conduct points to this problem. The Texas long-arm statute explicitly covers only tortious conduct and commercial transactions, and almost all the Fifth Circuit cases cited by the majority concern either tortious co nduct or commercial transactions.[7] The state has a definite interest in tortious conduct because state law deems such conduct wrongful. The state also has an interest in commercial transactions because state law governs the transactions. But the state’s interest in other nontortious conduct varies, see Restatement (Second) of Conflict of Laws §§ 36-37 (Comments), so it is necessary to find a particular basis in state law for the state’s interest in exercising jurisdiction. Compare Kulko, Part III. In today’s case there is no basis in state law that would give the state an interest in exercising jurisdiction.[8]
*1291 4. The majority’s effects test.
Additionally I have difficulty with the majority’s effects test. This test, as the majority articulate it, could apply broadly to many types of state regulation. I suggest this difficulty points to the i’nappropri-ateness of premising personal jurisdiction on the effects caused by state regulation.
The broad possible application of the majority’s effects test is evident from an examination of other state regulation of corporate activities, such as qualification to do business, insurance regulation and Blue Sky laws. When a state engages in such regulation, another state will not have judicial jurisdiction over the regulating state’s officials merely because the regulation causes, or can be expected to cause, extraterritorial effects. Yet these are examples of state regulations that require sometimes extensive or burdensome compliance and apply to corporations that are often incorporated by other states, headquartered out of state, and owned by nonresidents. There are also abundant examples of state regulations that less directly regulate corporate activities yet have great extraterritorial effects. For example, California’s strict requirements for automobile pollution devices have an immense (and foreseeable) impact on auto makers. But GM cannot sue the California regulators in Michigan simply because the California law has its effect there. Similarly, state laws regulating many phases of commerce will often be directed primarily at out-of-state corporations and thus have extraterritorial effects. Food purity laws are one example. Yet the extraterritorial effects are insufficient to support personal jurisdiction over those state officials charged with enforcing the law.
The majority leave unclear what is the exact effects test that they use. They stress that Idaho’s regulation foreseeably caused effects in Texas.[9] The effects they specify were Great Western’s efforts to comply with the regulation and the restraint of Great Western from its plan. But the majority recede from a test of foreseeably causing effects. They emphasize that “the crucial conclusion . is not that the actions of the Idaho defendant under the Idaho takeover law had a ‘practical effect’ in Texas, but that they amounted to the regulation of Great Western’s Texas-based business activities.”
If this is the majority’s test, then the examples I have given above could also be said to amount to the regulation of business activities based out of state. The majority suggest the examples can be distinguished away because of what they term “the con-cededly unique characteristics of state takeover laws such as Idaho’s.” They say, “In none of the examples ... is there a comparable lack of any connection between all parties to a transaction, as well as the transaction itself, and the regulating state.” To the contrary, Idaho’s statute — and state takeover laws such as Idaho’s — do indeed have some connection, possibly very substantial connection, with what they seek to regulate. First, the state will have a connection with some of the offerees, and not as a fortuity. It is reasonable to expect that many possible target companies covered by state takeover laws are held partially or largely by in-state shareholders. Second, the state has a connection to the transaction itself because the transaction in securities is ultimately one involving the target company’s business and properties.
It is difficult to separate the majority’s jurisdictional test from a substantive inquiry into the reasonableness of the statute. The only tenable distinction between state *1292 takeover laws such as Idaho’s and the examples of other state regulations having extraterritorial effects depends entirely on an anticipation of the majority’s Commerce Clause holding, namely, that these statutes are invalid under the Commerce Clause. See note 37 to the majority opinion.
C. Subject-matter jurisdiction under the Securities Exchange Act.
Subject-matter jurisdiction under the Securities Exchange Act requires that a plaintiff’s action be brought either to enforce a liability or duty created by the Act or to enjoin a violation of the Act.[10] In this case subject-matter jurisdiction is lacking because plaintiff’s action concerns none of these things.
The majority conclude that § 28(a) impliedly prohibits a state official from enforcing a statute that conflicts with the 1934 Act. This is a dubious reading of § 28(a), which simply says,
Nothing in this chapter shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder.
15 U.S.C. § 78bb(a) (1970). Section 28(a) immediately follows § 27’s grant of exclusive jurisdiction. On its face § 28(a) provides that a state securities commission’s jurisdiction is unaffected by the grant of exclusive jurisdiction.[11] The proviso guards against the section’s being read too broadly — federal law will still preempt conflicting state law. But this proviso does not impose a liability for the enactment or enforcement of preempted state law, it does not create a duty to refrain from such conduct, and it does not make such conduct a violation of the Act. Certainly it does not do so expressly, and the majority recognize as much.
Section 28(a) also does not impliedly impose a liability, create duty or define a violation, at least not in any sense that § 27 comprehends. Section 28(a), like the sections with which it is grouped, does not effect any positive regulation. It creates neither rights nor remedies. State legislation and regulation can of course be invalidated on Supremacy Clause grounds, but § 27’s conferral of subject-matter jurisdiction simply does not encompass Supremacy Clause cases.
*1293 The majority point to § 16(b) cases to show that a violation for the purposes of § 27 need not be a criminal violation. I agree that § 27 may include civil violations. See note 10 supra. The majority’s example also provides a useful counterpoint to this case to show what is an implied violation in the sense that § 27 comprehends. As the majority note, the Securities Exchange Act does not directly forbid short-swing trading by insiders. But the Act expressly creates a right in a corporation to recover any profit realized by an insider’s short-swing trading in the corporation’s stock. 15 U.S.C. § 78p(b) (1970). The implied violation is derived from this positive regulation. The insider’s liability is simply the other side of the right created in the corporation by the profit recapture provision.
D. Personal jurisdiction under § 27.
Section 27 provides for nationwide service: “[Pjrocess in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.”
I agree with the majority that if service were proper under the Texas long-arm statute, personal jurisdiction was of course obtained for the purposes of § 27. But if, as I have concluded,[12] the reach of the long-arm statute does not extend to grasp the defendant in this case, two unresolved questions would have to be reached: First, was the manner of service proper under the federal rules?[13] Second, was the extradis-trict service consistent with due process?[14] Because I conclude that in today’s case § 27 does not confer subject-matter jurisdiction,[15] I see no need to answer these controversial questions.
II. Venue
A. Venue under § 27.
Section 27 provides for venue in any district wherein any act or transaction constituting the violation occurred or in the district wherein the defendant is found or is an inhabitant or transacts business.[16] Because the Northern District of Texas is not a district where the defendant is found, is an inhabitant or does business, venue will be proper only if an act or transaction constituting the violation occurred in the district.[17] The majority conclude that the “restraining effect” of Idaho’s regulatory activities was a venue-conferring act. This hasty equation of effect with act deserves greater scrutiny.
The only case I find which directly supports the theory that an effect may be an act under § 27’s language is Travis v. Anthes Imperial Limited, 473 F.2d 515, 528-29 (C.A.8, 1973). One claim in that case dealt with conduct occurring in Canada that the court said had a foreseeable effect in the United States. The court first determined that the foreseeable effect was sufficient to make the exercise of jurisdiction reasonable. The court then determined that venue for this claim “lies in the [forum] district because [there] is where the consequences of the Canadian action were felt and where some acts and transactions constituting the violation occurred.” Because the court found not only effects but acts and transactions in the forum district,[18] *1294 its reference to effects was an unnecessary makeweight. The case is at best weak authority for the majority’s theory.
Many cases have held venue proper in situations where the defendant had never physically been in the forum district. Because the possibility of venue under such circumstances is broadly supportive of the majority’s conclusion, the cases warrant investigation. In Hooper v. Mountain States Securities Corp., supra note 10, we held that defendant’s telephone call, which plaintiff received in the forum district, followed by plaintiff’s transfer of funds from the same district, made venue proper. Similarly, in Hilgeman v. National Insurance Co. of America, supra note 13, we held that venue was proper in the forum district when the defendant sent a premium notice by mail to the district and plaintiff paid by a check drawn in the district. Decisions by other courts are similar. For example, venue has been held proper in the district where a fraudulent press release was transmitted, Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145 (C.A.10, 1967) (when followed by plaintiff’s sale of stock through a broker in the district), and the district where allegedly false proxy material was mailed to a shareholder, Mayer v. Development Co. of America, 396 F.Supp. 917 (D.Del.1975).[19] Though these cases at first blush seem helpful to the majority’s position, closer examination shows that they do not support a construction of § 27 that reads act to mean effect. All the cases can be confined to the rule they purport to apply — namely, the transmission or reception of any interstate communication supports venue in the forum district. The majority’s view of today’s case falls outside the rule these cases have applied. The effect felt because of regulatory activities is entirely different from the reception of an interstate transmission.
Another case finding venue proper when the defendant had never physically been in the forum district involved a failure to timely file a report required by federal law. Investors Funding Corp. of New York v. Jones, 161 U.S.App.D.C. 420, 495 F.2d 1000 (1974). The court, relying on analogous cases outside securities law, held that venue was properly laid in the district where the report was required to be filed. The rationale developed by the court was closely tied to the mechanics of filing, so this case also • offers no effective support for the majority’s theory.
In sum, though venue under § 27 has in some circumstances been held proper even when the defendant had never physically been in the forum district, the cases construing § 27 do not support the majority’s approach of regarding conduct elsewhere as occurring where it has an effect.
The majority alternatively note that “Idaho officials sent at least one interstate letter into Texas as part of their regulatory efforts.” The letter was signed by Melvin Baptie, Deputy Administrator-Securities of the State of Idaho’s Department of Finance and an assistant of defendant McEldowney, Director of the Department of Finance. The letter was a nontrivial part of Idaho’s enforcement of its statute. Thus, if § 27 were to confer subject-matter jurisdiction, I would agree that venue is proper under the rule we have followed in Hooper and Hilge-man.
B. Venue under the general venue statute.
The applicable general venue statute, 28 U.S.C. § 1391(b), provides that venue is proper “only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.” I agree with the majority that the claim arose in the Northern District of Texas.
*1295 The provision for venue where the claim arose serves two possible purposes. The provision ensures that in multiple-defendant actions venue will always be proper in at least one district. See Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1939, 32 L.Ed.2d 428, 431 n. 8 (1972). Also the provision will sometimes provide a forum that is more convenient for litigants and witnesses. See 1966 U.S.Code Cong. & Admin.News p. 3694.
The place where the claim arose need not be the same as the place of the defendant’s conduct. The venue provision replaced an earlier provision allowing a civil action for many automobile-related tort claims to be brought where “the act or omission complained of occurred.” 28 U.S.C. § 1391(f) (repealed 1966). The new provision’s different language evidences a congressional understanding that the place’ where the claim arose may be different than the place of the conduct.
There is room for disagreement whether it is better to apply a place-of-injury test, such as courts have tended to use with tort claims[20] and the majority apparently use in today’s case,[21] or a weight-of-the-contacts test, such as courts have preferred in more complex cases.[22] Because the alleged injury was felt in several places — both by the of- *1296 feror and the many offerees — the place-of-injury test is inexact. I would prefer the weight-of-the-contacts test, but either test, when applied in light of the statutory purposes of facilitating multiple-defendant suits and promoting ' litigational convenience, establishes that venue was proper in the Northern District of Texas.
III. Merits
Should jurisdiction exist and venue be proper, I would agree with the majority that Idaho’s takeover statute is preempted by federal law. Although the Williams Act does not expressly preempt state law, the Act regulates tender offers through a policy of deliberate neutrality .among takeover contestants. The Idaho statute increases the target company’s ability to resist an undesired takeover and thus upsets the careful balance struck by Congress. I would agree also that the statute is invalid under the Commerce Clause because the burden on interstate commerce exceeds the legitimate local interest served by the statute.[23]
IV.
Whether the Williams Act preempts state law and whether state takeover statutes may be invalid under the Commerce Clause are important national issues not previously-decided by a court of appeals. But the sweep of federal jurisdiction and venue are also important, in the long haul perhaps more important. Jurisdiction and venue in the- Northern District of Texas have been dubious, and fought over, in this case from the beginning. These threshold issues should not be submerged in this court in a rush to the merits, by the confecting of new and strained theories of jurisdiction and venue that will create new and vexing national and state problems and diminish the strength of the merits decision. I respectfully dissent.

. As I read the majority’s opinion they do not reach the question whether 28 U.S.C. § 1337 would also confer subject-matter jurisdiction, and of course it is unnecessary to answer that question in this case.

. We recently found no personal jurisdiction under the Texas long-arm statute in Barnstone v. Congregation Am Echad, 574 F.2d 286, p. 289 (C.A.5, 1978), because “the defendant has neither transacted any purposeful activity within the State of Texas nor has it invoked the benefits and protection of the laws of Texas , . . .” The Supreme Court, when it found no minimum contacts in Shaffer v. Heitner, 433 U.S. at 216, 97 S.Ct. at 2587, 53 L.Ed.2d at 705, specifically said that the defendants in that case had not availed themselves of the privilege of conducting activities in Delaware in a way that would justify bringing them before a Delaware tribunal. Even more recently the Supreme Court concluded that the defendant in Kulko had not purposefully derived any benefit from any activities relating to the State of California which would justify that state’s exercise of personal jurisdiction over him.

. Moreover it seems incorrect to treat this wispy possibility as a jurisdictional factor. I think the majority recognize the insubstantiality of what they call a benefit. They suggest the benefit factor should be discounted when the “benefit” is attenuated and speculative (but without actually discounting the factor in this case). See note 28 to majority opinion. It is true the presence of a benefit alone does not satisfy the minimum-contacts test. Other criteria must be met as well. All the same, the “benefit” the majority see suggests that governors, state prosecutors, and state regulatory officials charged with enforcing state laws concerning a multitude of corporate activities are daily subjecting themselves to the reach of civil suits with long-arm service of process.
But cf. Maney v. Ratcliff, 399 F.Supp. 760 (E.D.Wis.1975) (solicitation of arrest and representation that extradition would be sought held purposeful availing of the benefits of state law in § 1983 civil rights action).

. The Supreme Court recognized that the effects test the state court used was derived from the ALI’s Restatement (Second) of Conflict of Laws § 37 (1971), which provides:
“A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual’s relationship to the state make the exercise of such jurisdiction unreasonable.”

. The majority’s argument that “Idaho’s ‘business’ is to regulate” confuses a pun with analysis. It is true that a state government may at times engage in commercial activities, but the regulatory activities involved in this case do not present such an instance and cannot be made such by a semantical device.

. To support the effects test they use the majority refer to two district court opinions, saying, “Personal jurisdiction has been found to exist over price fixing conspirators whose illegal activities in one state were designed to control prices in the forum state.” Hitt v. Nissan Motor Co., 399 F.Supp. 838 (S.D.Fla. 1975), vacated on other grounds, 552 F.2d 1088 (C.A.5, 1977), may not even hold what the majority read it to hold. Although the court noted that the defendant “surely must have contemplated that any price-fixing it might have engaged in would have consequences extending into the forums,” 399 F.Supp. at 848, the court also analogized price fixing to products liability and placed great weight on the defendant’s causing products to be shipped to or sold by wholly owned subsidiaries in the forums. The court suggested that causing products to enter the stream of commerce might have been sufficient. In Maricopa County v. American Petrofina, Inc., 322 F.Supp. 467 (N.D.Cal.1971), the court said, without much analysis, that the price-fixing conspiracy created a destructive force which caused events and effects in the forum state. In both Hitt and Maricopa the courts explicitly or implicitly justified jurisdiction by the similarity they perceived between price fixing and tortious conduct. This justification does not extend to today’s case: a suit to enjoin the enforcement of state regulation bears little resemblance to a damages action sounding in tort.

. See Wilkerson v. Fortuna Corp., 554 F.2d 745 (C.A.5) (commercial tort), cert. denied, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (C.A.5, 1974) (commercial tort); Jetco Electronic Indus., Inc. v. Gardiner, 473 F.2d 1228 (C.A.5, 1973) (commercial activity); Benjamin v. Western Boat Bldg. Corp., 472 F.2d 723 (C.A.5, 1973); Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (C.A.5, 1969). The only possible exception is Black v. Acme Markets, Inc., 564 F.2d 681 (C.A.5, 1977), an antitrust case.

. Texas may have a general interest in allowing its residents to use Texas courts in actions against nonresidents, but it is a weak interest because as a practical matter Great Western would not be precluded from bringing its action were the Texas courts unavailable. See Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 498 n. 27 (C.A.5, 1974); compare McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).
Although Supreme Court cases leave no doubt that the factor of the state’s interest should be included in the consideration of a state’s exercise of judicial jurisdiction, some federal courts considering personal jurisdiction when service is made pursuant to a state’s long-arm statute but under the federal rules have overlooked this factor. For example, several decisions have held that Fed.R.Civ.P. 4(e) is available even in cases exclusively within federal question jurisdiction, see 4 Wright & Miller, Federal Practice and Procedure: Civil § 1115 at 470 & n.9, even though the state’s *1291 long-arm statute logically would not apply “under the circumstances” because the state would lack an interest to justify its exercise of jurisdiction.

. A good exposition of a general effects test is Restatement (Second) Conflict of Laws § 37. Although § 37 as formulated does not contain a foreseeability element, the official caveat notes that a state can seldom exercise judicial jurisdiction over an individual who causes effects in a state by an act done elsewhere when those effects were not foreseeable. Section 37, however, does not support the majority’s position. Rather, § 37 notes the constitutional requirement that the nature of the individual’s contacts with the state must be such that the exercise of jurisdiction is reasonable, a requirement that is not met in this case.

. Subject-matter jurisdiction and venue under . the Securities Exchange Act of 1934 are both controlled by § 27, 15 U.S.C. § 78aa (1970), which provides:
“The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.”
The reference to criminal proceedings suggests that the violation must be a criminal violation, but I agree with the majority that violation may also refer to a civil violation. Additional support for this conclusion may be found in Hooper v. Mountain States Securities Corp., 282 F.2d 195, 204 (C.A.5, 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961), where we said that a civil action could be maintained under § 27 even “in circumstances where a criminal proceeding would fail.”

. The Securities Act of 1933, 15 U.S.C. § 77r, the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79u, the Trust Indenture Act of 1939, 15 U.S.C. § 77zzz, and the Investment Company Act of 1940, 15 U.S.C. § 80a-49, contain similar provisions. Only the Securities Act of 1933’s provision does not include a proviso similar to “insofar as such jurisdiction does not conflict with any provision of this chapter,” but it has been so construed. Travelers Health Ass’n v. Commonwealth, 188 Va. 877, 895-897, 51 S.E.2d 263, 271 (Va.1949), affd, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950).

. See part IB supra.

. Because § 27 authorizes nationwide service but does not prescribe the manner of service, Fed.R.Civ.P. 4(e) might be read to allow the Texas long-arm statute to provide the manner of service, even though the statute would not provide for service under the same circumstances. See Black v. Acme Markets, Inc., 564 F.2d 681 (C.A.5, 1977) (dictum). But see Hilgeman v. National Insurance Co. of America, 547 F.2d 298 (C.A.5, 1977).

. Although some courts have required minimum contacts with the forum district, arguably the due process concerns raised when a state exercises extraterritorial jurisdiction have no application to a federal court’s exercise of ex- . tradistrict jurisdiction when a federal statute authorizes nationwide service. See, e. g., Mar-iash v. Morrill, 496 F.2d 1138, 1142-43 (C.A.2, 1974).

. See part IC supra.

. Section 27 is quoted in full at note 7 supra.

. As I have already pointed out, see note 7 supra. I agree with the majority that the statutory violation need not be a criminal violation, even though § 27 suggests otherwise.

. The court situated the acts by relying on the rule, discussed in the next paragraph, that interstate communications occur in both the *1294 place of sending and the place of receipt. See 473 F.2d at 524 n.16.

. See Sarratt v. Walker, 405 F.Supp. 132 (D.S. C.1972) (mailing financial statement and solicitation); Stern v. Gobeloff, 332 F.Supp. 909 (D.Md.1971) (telephone solicitation); Oxford First Corp. v. PNC Liquidating Corp., 372 F.Supp. 191 (E.D.Pa.1974) (transmission of false information); Prettner v. Aston, 339 F.Supp. 273 (D.Del.1972) (solicitation of proxies by mail); Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y.1967) (dissemination of allegedly false financial reports).

. E. g., McCrory Corp. v. Cloth World, Inc., 378 F.Supp. 322, 325 (S.D.N.Y.1974); Chance v. E. I. DuPont de Nemours & Co., Inc., 371 F.Supp. 439, 450 (E.D.N.Y.1974); see Walker v. Kawasaki Motors Corp., 62 F.R.D. 607, 611 (E.D.Tenn.1973).

. The majority say:
“The core of Great Western’s claim is that the Idaho officials invalidly prevented Great Western from initiating a tender offer for Sunshine. The offer was initiated in Dallas, Texas. If there is a single place where the allegedly invalid restraint ... occurred, that place is Dallas.”
See also majority opinion at note 31. I interpret the majority’s position to be that the claim arose where the effects were felt.
The concept of effects — that is, the effects of Idaho’s regulation — is critical to nearly every step of the majority’s analysis. They find personal jurisdiction under the Texas long-arm statute because of foreseeable effects on business activities in Texas. They find venue under § 27 because they regard the restraining effect of Idaho’s regulation as an act in Texas. And they, find venue under § 1391(b) because they view the restraining effect as giving rise to the claim. It may be helpful to sort out the differences among these various effects tests. The personal jurisdiction effects test of course has an element of foreseeability and is limited to the regulation of business in Texas. The other effects tests lack similar qualifications. The § 1391(b) effects test requires Texas to be where the effects were primarily felt, because the majority follow the orthodox position that a claim arises in only one district (despite their criticism of this position). For the personal jurisdiction effects test and the § 27 effects test, it matters not whether the effects were primarily in Texas or the Northern District of Texas. It is enough that some effects were felt there.

. Antitrust cases applying this test include Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252, 260-61 (E.D.Pa.1968); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 309 F.Supp. 1053, 1056 (E.D.Pa.1969); Ghazoul v. International Management Services, Inc., 398 F.Supp. 307, 314-15 (S.D.N.Y.1975); U. S. Dental Inst. v. American Ass’n of Orthodontists, 396 F.Supp. 565, 574 (N.D.Ill.1975); Redmond v. Atlantic Coast Football League, 359 F.Supp. 666, 669-70 (S.D.Ind.1973); Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc., 338 F.Supp. 812, 815-16 (E.D.Pa.1972); California Clippers, Inc. v. U. S. Soccer Football Ass’n, 314 F.Supp. 1057, 1062-63 (N.D.Cal.1970); ABC Great States, Inc. v. Globe Ticket Co., 310 F.Supp. 739, 742-43 (N.D.Ill.1970); Goggi Corp. v. Outboard Marine Corp., 422 F.Supp. 361 (S.D.N.Y.1976); Grappone, Inc. v. Subaru of America, Inc., 403 F.Supp. 123 (D.N.H.1975). But see Albert Levine Assocs. v. Bertoni & Cotti, 314 F.Supp. 169, 170-71 (S.D.N.Y.1970) (place of injury). Cases in other fields applying the test include B. J. McAdams, Inc. v. Boggs, 426 F.Supp. 1091, 1103 (E.D.Pa.1977) (breach of fiduciary duty); Kipperman v. McCone, 422 F.Supp. 860 (N.D.Cal.1976) (violation of constitutional right); Honda Assocs., Inc. v. Nozawa Trading, Inc., 374 F.Supp. 886, 891-92 (S.D.N.Y.1974) (trademark infringement); British-American Ins. Co. Ltd. v. Lee, 403 F.Supp. 31 (D.Del. 1975) (securities law); Weil v. New York State Dept. of Transp., 400 F.Supp. 1364, 1365 (S.D. N.Y.1975) (civil rights); Idaho Potato Comm’n v. Washington Potato Comm'n, 410 F. Supp. 171, 175-76 (D.Idaho 1976) (trademark infringement and unfair competition). But see Iranian Shipping Lines, S.A. v. Moraites, 377 F.Supp. 644, 648 (S.D.N.Y.1974) (Securities case using place-of-injury test).

. To touch the rest of the bases, I agree with the majority that the issues presented by this case are not moot. And at first glance I would agree that Ex parte Young does not preclude the suit’s being brought outside Idaho. That landmark decision established simply that a state officer can be sued to enjoin his enforcement of state law and did not speak at all to the forum in which he can be sued. Indeed, the opinion suggests that the officer can be sued in any court “having jurisdiction, Federal or state,” 209 U.S. at 165, 28 S.Ct. 441, 456, 52 L.Ed. at 731, and the logic of the opinion implies as much. On closer examination the problem is less simple. The majority premise jurisdiction in the federal district court on their conclusion that the action could have been brought in a Texas state court. The possibility of one state court passing judgment on another state’s laws may reach the boundary where the doctrine of Ex parte Young is overshadowed by the policies of the Eleventh Amendment.