**GOGGI CORPORATION and Goggi International, Ltd., Plaintiffs,**

v.

**OUTBOARD MARINE CORP. et al., Defendants.**

**No. 75 Civ. 497.**

United States District Court, S. D. New York.

June 18, 1976.

---

, John M. Burns, III, New York City, for plaintiffs.

Proskauer Rose Goetz & Mendelsohn, New York City, for defendant Outboard Marine Corp. by Jacob Imberman, Steven J. Stein, Lawrence S. Greher, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for defendant Boating Industry Association by Laurence Greenwald, New York City, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill. by Burton Y. Weitzenfeld, Stanley M. Lipnick, Chicago, Ill., of counsel.

## OPINION and ORDER

KEVIN THOMAS DUFFY, District Judge.

A variety of motions addressed to jurisdiction, venue, and the pleadings have been raised by several of the parties in this case. This opinion will dispose of the several motions.

The defendant Boating Industry Association ("BIA") moves to sever or dismiss plaintiffs' action against it on grounds of improper venue and/or lack of personal jurisdiction. The plaintiffs Goggi Corp. and Goggi International, Ltd. ("Goggi") are New York corporations engaged in manufacturing and selling devices which, when attached to outboard motors manufactured by defendants Chrysler Corp. and Outboard

Marine Corp. ("OMC") allegedly collect and recirculate unburned fuel which would otherwise be discharged by the motors into the water. BIA, a partnership, is a trade association made up of member trade associations which are involved in the boating industry. The offices of BIA and its member associations are all located in Chicago, Ill.

The plaintiffs have sued alleging anti-trust law violations, trade disparagement, prima facie tort, libel and slander. The defendants include various boat and boating equipment manufacturers and dealers. The bases of plaintiffs' anti-trust claim against BIA according to the complaint are: (1) BIA's allegedly unjustified refusal, under the control of Chrysler and OMC to certify BIA's products pursuant to its accessory equipment certification program thus precluding the sale of plaintiffs' products by Chrysler and OMC dealers who may only deal in certified accessory products; (2) BIA's alleged notification of dealers and the public that Chrysler and OMC will not honor warranties for their outboard motors if devices of the type manufactured by plaintiffs are installed; and (3) BIA's disparagement and misrepresentation of plaintiffs' products.

That portion of defendant BIA's motion which is addressed to *in personam* jurisdiction charges that "long arm" service of process, as was utilized by plaintiffs, was inappropriate in this case. According to BIA neither New York CPLR § 302(a)(2) nor § 302(a)(3)(ii), the sections relied on by plaintiffs, are available. Under § 302(a)(2) the tortious act sued upon must have been committed within New York; whereas under § 302(a)(3)(ii) the tortious act may have been committed outside New York if the defendant expects or should reasonably expect the act to have consequences in New York and the defendant derives substantial revenue from interstate or international commerce. It is plaintiffs' position that "long arm" service was proper under both of these sections.

■ Plaintiffs claim that many tortious acts were committed by BIA in New York citing one conversation which occurred in 1970 in New York during which BIA representatives at a press reception allegedly described "anti-drain devices" as "obsolete." Defendant counters that this was a private communication to an employee of OMC and a member of the State General Assembly which caused no injury or damage to plaintiffs. However this is a question of fact which can only be resolved at trial. Moreover, BIA's own affidavit and memorandum of law state that BIA personnel have made occasional trips to New York during which BIA's positions on pending legislation and governmental regulations apparently were discussed.

The defendant claims that any such statements were within the first amendment's protection since they were lobbying activities. See *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R. R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Nevertheless, the relationship of these statements to pending legislation or governmental action is an issue of fact for trial as is the plaintiffs' allegation that statements which are claimed to have been lobbying efforts were "mere sham" within *Noerr; California Motor Transport Co. v. Trucking, Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); and *Otter Tail Power Co. v. U. S.*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973).

The other allegedly tortious activities of BIA including communications to dealers, members of the press, and the public as well as BIA's certification practices apparently originated outside New York. However, many of these statements were made to people located in New York; certain of the communications were admittedly lobbying efforts directed toward New York legislation; the plaintiffs, who were the targets of the alleged conspiracy, are New York corporations; and the co-defendants Chrysler and OMC have franchised dealers in New York. All of these factors justify a conclusion that BIA could reasonably have foreseen consequences of its actions in New York.

Finally, under N.Y. CPLR § 302(a)(3)(ii), the defendant must "derives substantial revenue from interstate or international commerce." This requirement is satisfied by BIA's concession that in 1974, allegedly a high income year, its non-Illinois revenue was approximately $140,000. Defendant contends that this does not constitute "substantial" revenue.

■ In support of this argument defendant cites *Path Instruments Int'l Corp. v. Asahi Optical Co.,* 312 F.Supp. 805 (S.D.N.Y.1970) wherein the district court indicated that while the defendant's $85,000 sales revenue over a 10 month period would not seem to be "substantial" "in absolute terms" (312 F.Supp. at 809), its status as a subsidiary which functioned as United States distributor for a larger Canadian corporation and the interstate nature of its business overcame any doubts as to the "substantial revenue" requirement of § 302(a)(3)(ii). Defendant likens itself to the defendant in *Path Instruments* inasmuch as its interstate revenues do not, it is contended, greatly exceed those of the defendant in that case. In fact, projecting the *Path Instruments* defendant's income for a full year it would have been approximately $38,000 less than the $140,000 figure with which we are dealing in the case at hand. Moreover, BIA's relationship with the nation-wide industry which it represents coupled with the fact that its nation-wide certification program, which is challenged in the instant action, is the source of its interstate income are factors similar to those in *Path Instruments* which overcome any doubt as to the fulfillment of the "substantial revenue" requirement in this case.[1]

Turning to that portion of defendant's motion which is addressed to venue, I find that venue in this case is properly laid in this district. The parties are in apparent agreement that if venue is proper in this case it must be under 28 U.S.C. § 1391(b).[2] See *Albert Levine Assoc. v. Bertoni & Cotti,* 314 F.Supp. 169 (S.D.N.Y.1970). Plaintiffs claim that under 28 U.S.C. § 1391(b) venue is proper here since this is the district "in which the claim arose."

It is the plaintiffs' position that BIA's statements to the press, dealers and the public which were either made in or circulated in this district justify venue here. Furthermore, plaintiffs claim that since defendant's certification procedure forecloses plaintiffs' entry into the New York outboard motor accessory market, that portion of its claim arose in this district. See *Albert Levine Assoc. v. Bertoni & Cotti,* 314 F.Supp. 169 (S.D.N.Y.1970); *Iranian Shipping Lines v. Moraites,* 377 F.Supp. 644 (S.D.N.Y.1974).

Defendant counters that all of its challenged statements are protected under the first amendment and the *Noerr* and *Pennington* cases cited above. However, the question as to whether or not these were protected statements is, as noted above, not presently at issue, especially since this motion is addressed to venue and not to any claimed failure to state a cause of action.

Defendant next argues that the certification procedures and statements to the press originated in Illinois. Admitting that communications to the press were sent into New York, allegedly as lobbying efforts to influence the outcome of pending New York legislation, defendant claims that such statements "had no particular nexus with the Southern District of New York." Clearly, as found in connection with the jurisdiction motion, these activities should reasonably have been expected to have consequences in New York.

---

1. Defendant, in its attempt to distinguish this case from *Path Instruments,* argues that "it is not a constituent of an industrial empire," apparently suggesting that the defendant in *Path Instruments* was viewed as such. If in fact this was the rationale behind the decision upholding jurisdiction in that case, I find it to be no less applicable to the case at hand where the "empire" is not a foreign parent corporation, but rather an entire nation-wide industry.

2. The only other venue provision which would be applicable is 15 U.S.C. § 15 which creates venue where the defendant resides, is found, or has an agent. It would appear that none of these conditions exists in the Southern District of New York.

The defendant further argues that if the alleged injury flowing from its Illinois certification procedures is found to have arisen in New York, it could also be said to have arisen in any district in which is found an outboard motor owner or dealer. Thus, it is argued, venue would be appropriate in so many districts as to be illogical. See *Honda Assoc., Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886 (S.D.N.Y.1974). In support of this argument defendant urges reliance on *Philadelphia Housing Authority v. American Radiator & Standard Corp.*, 291 F.Supp. 252 (E.D.Pa.1968) wherein a "weight of the contacts" test was applied on the venue question in an alleged nation-wide price fixing conspiracy.

However, even under such a test a substantial portion of plaintiffs' claim could well be said to have arisen in this district. See *Iranian Shipping Lines v. Moraites*, 377 F.Supp. 644 (S.D.N.Y.1974). Not only are plaintiffs New York corporations, but this district is alleged to be a major outboard motor market and defendant's challenged statements were allegedly made in or circulated in New York.

Finally, judicial economy could hardly be said to be served by transferring a portion of this anti-trust action to another district so that many issues of fact would have to be litigated twice.

For all of the above reasons the motions to dismiss and/or transfer venue are denied.

A co-defendant of BIA, Outboard Marine Corp. ("OMC"), has also moved to dismiss or sever and transfer the eighth claim in the complaint for improper venue. The eighth claim alleges that OMC has infringed on plaintiffs' patent by manufacturing "drainless" outboard motors which allegedly incorporate plaintiffs' patented device to recover fuel which would ordinarily be discharged by the engine. The plaintiffs have cross-moved to amend the complaint to include the alleged patent infringement in claim five of the complaint as an act in furtherance of OMC's attempt to monopolize the outboard motor accessory market.

OMC's motion challenges the propriety of venue in this district on the patent claim. Defendant points out that under 28 U.S.C. § 1400(b), the applicable venue statute, venue is proper either where the defendant resides or where it "has committed acts of infringement and has a regular and established place of business." OMC is apparently a Delaware corporation with most of its manufacturing and business facilities in the Eastern District of Wisconsin. It maintains no facilities in the Southern District of New York nor does it sell or use any of the allegedly infringing motors here. Its sales are apparently made in Wisconsin to independent dealers who thereafter distribute the motors. It is OMC's contention that under the circumstances, the Eastern District of Wisconsin would be the proper venue for the patent infringement claim.

The plaintiffs apparently concede that their patent infringement claim does not meet the standard of 28 U.S.C. § 1400(b) in this district. However, plaintiffs argue that § 1400(b) is not the exclusive venue provision applicable to this case. Plaintiffs admit that § 1400(b) is not extended by the general federal venue statute, 28 U.S.C. § 1391. See *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). However, under *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), Goggi urges that a plaintiff asserting a patent infringement claim is not absolutely limited to the venue restrictions of § 1400(b).

In the *Brunette* case, the plaintiff's patent claim was asserted against a Canadian corporation. The Supreme Court held that 28 U.S.C. § 1391(d), the venue provision applicable to alien defendants, was available to plaintiff. The *Brunette* case set forth a special exception to the patent venue statute. See also, *SCM Corp. v. Brother Int'l Corp.*, 316 F.Supp. 1328 (S.D.N.Y.1970). Nevertheless, § 1400(b) must in most cases be held to be exclusive. See *Brunette*, 406 U.S. at 711–13, 92 S.Ct. 1936; see also *Stonite Prods. Co. v. Melvin Lloyd*

*Co.,* 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942).

Plaintiffs argue that this case presents an occasion on which the patent venue statute should be set aside in favor of a theory of "pendent venue;" that is, plaintiffs should be allowed to amend one of their anti-trust claims against OMC to include the alleged patent infringement and to thereby justify bringing on the infringement claim in this district. In addition, plaintiffs argue that OMC's defense of "truth" to the product disparagement claim in the complaint may be disproved if plaintiffs make out their claim of patent infringement.

The so-called theory of "pendent venue" has received limited application and acceptance. Where it has been applied, it has usually been in the context of common law claims which are jurisdictionally pendent to federal claims. See *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515 (8th Cir. 1973); *Garfinkle v. Arcata National Corp.,* 360 F.Supp. 1296 (S.D.N.Y.1973). Compare *Locke Mfg. Co. v. Sabel,* 244 F.Supp. 829 (W.D.Ky.1965) (district court declined to find "pendent venue" for patent claim in copyright case).

In *Bradford Novelty Co. v. Manheim,* 156 F.Supp. 489 (S.D.N.Y.1957), the alleged "pendent venue" of a patent claim was premised on the proper venue of a jurisdictionally pendent common law claim of unfair competition. Clearly there the application of the theory plaintiff urges here, would, as the court there found, have undermined the patent venue statute.

The defendant argues that the same danger of allowing plaintiffs to circumvent the statute inheres in this case. They argue that a plaintiff should not be permitted to circumvent the patent venue statute by joining an anti-trust claim and a patent claim.

Plaintiffs cite three cases in which courts have apparently endorsed their theory of "pendent venue" in patent cases. *Shelter-Lite, Inc. v. Reeves Brothers, Inc.,* 356 F.Supp. 189, 196 note 8 (N.D.Ohio 1973) (anti-trust and patent claims); *Dolly Toy Co. v. Bancroft-Rellim Corp.,* 97 F.Supp.

531, 536 (S.D.N.Y.1951) (copyright, patent, and unfair competition claims); *Ferguson v. Ford Motor Co.,* 77 F.Supp. 425, 436 (S.D.N.Y.1948) (anti-trust, patent, and common law claims). However, in all three cases the court apparently found that the requirements of the patent venue statute had been met. The sense of these opinions was that where there is substantial identity of issues and proof, it is most economical to try the various claims at one time.

It is apparent to me from the pleadings and motions thus far interposed in the case that this anti-trust action focuses on the various defendants' activities vis-a-vis pre-1971 non-drainless outboard motors; whereas, the patent claim is limited to one defendant (OMC) and its post-1973 drainless outboard motors. It would appear that while there may be some limited overlap in the proofs on the anti-trust and patent claims, that judicial economy will not be served in this case by allowing the patent claim to be tried in connection with the anti-trust action.

The defendant OMC's motion to sever the eighth claim and transfer it to the Eastern District of Wisconsin is granted. Plaintiffs' cross-motion to amend the complaint is denied since the proposed amendment appears designed solely to justify the retention of the patent claim in this district.

So ordered.