**HSIN TEN ENTERPRISE USA, INC., Plaintiff,**

v.

**CLARK ENTERPRISES and Clifford D. Clark, Defendants.**

**No. 00 CIV. 5878(SAS).**

United States District Court, S.D. New York.

Dec. 29, 2000.

Martin G. Raskin, Joshua L. Raskin, Steinberg & Raskin, P.C., New York City, for Plaintiff.

Arlen L. Olsen, Schmeiser, Olsen & Watts LLP, Latham, NY, for Defendants.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Hsin Ten Enterprise USA, Inc. ("Hsin Ten") has sued Clark Enterprises and Clifford D. Clark, asserting claims of patent and trademark infringement, as well as state law claims. Defendants now move to dismiss the Amended Complaint for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Proce-

dure 12(b)(2) and 12(b)(3). For the foregoing reasons, defendants' motion is granted in part and denied in part.

## I. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(2), a "court must assume all of the plaintiff's factual allegations are true, and all 'doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.'" *Nader v. Getschow*, No. 99 Civ. 11556, 2000 WL 1471553, at *2 (S.D.N.Y. Sept. 29, 2000) (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993)). The plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). However, at this early stage in the proceedings, where no evidentiary hearing has been held, the plaintiff need make only a prima facie showing of jurisdiction. *See Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999). Moreover, a court may consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment.[1] *See Dan–Dee Int'l, Ltd. v. KMart Corp.*, 99 Civ. 11689, 2000 WL 1346865, at *2 (S.D.N.Y. Sept. 19, 2000); *see also Bank Brussels Lambert*, 171 F.3d at 784 (stating that prima facie showing of jurisdiction can be satisfied with allegations in plaintiff's affidavits and supporting materials).

## II. BACKGROUND

### A. Allegations of the Amended Complaint

Hsin Ten is a New York corporation with its principal place of business in Farmingdale, New York. *See* Amended Complaint ¶ 1. Hsin Ten entered into an exclusive licensing agreement ("the Licensing Agreement") with Skylite Industry Co. Ltd. ("Skylite"), granting Hsin Ten the exclusive right to manufacture, use and sell aerobic exercise machines under two patents issued to Skylite.[2] *See id.* ¶ 10. Hsin Ten also owns the "The Chi Machine" trademark and markets and sells an "electric massage apparatus" bearing that mark. *Id.* ¶ 11–12. Plaintiff alleges that because of its extensive sales and advertising, the "The Chi Machine" mark is associated with plaintiff's electric massage apparatuses. *See id.* ¶ 13.

Clark Enterprises ("Clark") is a Kansas company with its principal offices in Salina, Kansas. *See id.* ¶ 2. It maintains no established place of business anywhere other than Salina, Kansas. *See* Clark Aff. ¶ 5. Clark is a sole proprietorship of Clifford Clark, who resides in Salina, Kansas. *See* Amended Complaint ¶¶ 2, 3. In or about January 2000, Clark began marketing an aerobic exercise machine (the "Exercise Machine") in direct competition with Hsin Ten's "The Chi Machine" brand aerobic exercise machines. *See* 10/23/00 Acevedo Decl. ¶ 6. Plaintiff alleges that Clark

---

1. Because limited jurisdictional discovery was conducted after the filing of the Complaint, the Court must rely heavily on the declarations and affidavits of the parties and the exhibits attached thereto. *See* 8/31/00 Affidavit of Clifford Clark ("Clark Aff."); 10/23/00 Declaration of plaintiff's counsel Joshua L. Raskin ("Raskin Decl."); 10/23/00 Declaration of Peter Acevedo, Vice President Assistant of Hsin Ten ("10/23/00 Acevedo Decl.");

12/27/00 Declaration of Peter Acevedo ("12/27/00 Acevedo Decl.").

2. On April 28, 1992, U.S. Patent number 5,107,822 for "Apparatus for Giving Motions to the Abdomen" was issued to Skylite. *See* Amended Complaint ¶ 8. On September 15, 1992, U.S. Design Patent number Des. 329,499 for "Electric Foot Massager" was issued to Skylite. *See id.* ¶ 9.

calls its machine "The Chi Exerciser 2000."[3] *See id.*

Plaintiff asserts five claims against defendants. Claims I and II allege that defendants' Exercise Machine infringes the two patents for which plaintiff is the exclusive licensee. *See* Amended Complaint ¶¶ 16–19. Claim III alleges that defendants' use of the "Chi" trademark is likely to cause confusion as to the source of the Exercise Machines, and therefore, constitutes trademark infringement. *See id.* ¶ 21. Claims IV and V assert that defendants' use of the "Chi" trademark constitutes unfair competition under New York common law, and deceptive acts and practices in violation of N.Y. Gen. Bus. §§ 349, 350 (McKinney 1988), respectively. *See id.* ¶¶ 23, 25.

### B. Jurisdictional Allegations

Clark enlists representatives to promote and sell its Exercise Machines. *See* 10/23/00 Acevedo Decl. ¶ 7. These representatives appear at trade shows, fairs, mall locations and clinics throughout the United States, and receive commissions for each Exercise Machine sold. *See id.* Additionally, representatives receive bonuses for each Exercise Machine sold by another representative as a result of a referral. *See id.* This year, Clark representatives have offered the Exercise Machine at two New York trade shows—in Amherst, New York and Syracuse, New York. *See* 10/19/00 Letter from John E. Gibson, counsel for defendants, to plaintiff's counsel Martin G. Raskin ("10/19/00 Gibson Letter"), Ex. 8 to Raskin Decl., at 2.

Clark also utilizes Internet websites (the "Websites") to market the Exercise Machine.[4] *See* 10/23/00 Acevedo Decl. ¶ 8. The Exercise Machines may be purchased on the Websites either by completing an order form online, or by printing an order form and submitting it to Clark via mail or facsimile. *See id.* ¶ 9. The Websites also provide customers a help service by which customers may e-mail Clark with questions and receive responses from an online representative. *See id.*

Furthermore, the Websites advertise Clark's affiliate referral system. *See id.* ¶ 10. Once an individual purchases an Exercise Machine, she may submit an application to become an "Independent Affiliate". Clark has received five "Independent Affiliate" applications from New York residents, none of whom reside within the Southern District of New York. *See* 10/23/00 Letter from John E. Gibson to Martin G. Raskin ("10/23/00 Gibson letter"), Ex. 10 to Raskin Decl., at 1.

Of the 1,855 Exercise Machines Clark has sold since the product was introduced on July 8, 1999, eighteen were sold to customers in New York.[5] *See id.* These

---

**3.** In July 2000, Clark appeared to change the name of the Exercise Machine from the "Chi Exerciser 2000" to the "Exerciser 2000". However, at least one of defendants' websites, *see infra* Part II.B, still uses the name "Chi Exerciser 2000" to promote the Exercise Machine, and the term "Chi" is frequently used on defendants' websites to refer to the Exercise Machine. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Pl.Opp.") at 5 n. 4.

**4.** Plaintiff alleges that one of the Clark Websites is operated directly by Clark and the other websites are operated by representatives of Clark. *See* Pl. Opp. at 5–6.

**5.** During oral argument, defendants' counsel stated that only eleven of those eighteen Exercise Machines were sold prior to August 9, 2000, the filing date of the Complaint. *See* 11/3/00 Transcript of Oral Argument at 2. Furthermore, one of the eighteen Exercise Machines was sold at a trade show in Ohio to a New York customer. *See* Defendant's [sic] Reply Memorandum of Law in Support of Its [sic] Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Def. Reply Mem.") at 2.

sales occurred through referrals, the two New York trade shows, and one Internet sale. *See* 10/18/00 Letter from John E. Gibson to Martin G. Raskin ("10/18/00 Gibson Letter"), Ex. 5 to Raskin Decl., at 2. One of Clark's customers resides in Plandome, New York, within the Eastern District of New York. *See* 10/19/00 Gibson Letter, Ex. 8 to Raskin Decl. at 2; Order Forms, Ex. 4 to Raskin Decl., at 15. None of Clark's customers are alleged to reside in the Southern District of New York.

## III. DISCUSSION

### A. Standing

■ While neither plaintiff nor defendants have addressed whether plaintiff, as an exclusive licensee of Skylite's patents, has standing to sue for patent infringement, it is well-established that "[a]s a general rule, ... a patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee." *Prima Tek II, L.L.C., v. A–Roo Co.,* 222 F.3d 1372, 1377 (Fed. Cir.2000); *see also Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1130–31 (Fed.Cir. 1995) ("A licensee may obtain sufficient rights in the patent to be entitled to seek relief from infringement, but to do so, it ordinarily must join the patent owner."). "The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991).

However, this general rule is subject to an exception where the patentee made an assignment of "all substantial rights under the patent." *Prima Tek II,* 222 F.3d at 1377; *Vaupel,* 944 F.2d at 876; *Adams v. Westminster Int'l Co.,* No. 98 Civ. 2489,

1999 WL 596272, at *1 (S.D.N.Y. Aug. 9, 1999). Transfer of the exclusive right to sue for patent infringement is "particularly dispositive" and will generally permit an exclusive licensee to sue without joining the patentee as a co-plaintiff. *Vaupel,* 944 F.2d at 875–76.

In the Licensing Agreement, Skylite granted to Hsin Ten "the exclusive right and license worldwide except for the country of Japan to manufacture, use and sell the Exerciser covered by" the two patents issued to Skylite. *See* Licensing Agreement, Ex. 1 to 12/27/00 Acevedo Decl., at 1. Additionally, the Licensing Agreement contains a section concerning suits against infringers:

> Each party shall notify the other party of any suspected infringement of the letters patents in the licensed territory and shall inform the other party of any evidence of such infringement(s). LICENSEE [Hsin Ten] shall have the first right to institute suit for infringement(s) in the licensed territory so long as this Agreement remains exclusive. LICENSOR [Skylite] agrees to join as a party plaintiff in any such lawsuit initiated by LICENSEE, if requested by LICENSEE, with all costs, attorneys' fees, and expenses to be paid by LICENSEE. LICENSEE shall be entitled to any recovery of damages for infringement, both past and present damages, of the letters patents resulting from a lawsuit brought by LICENSEE or LICENSOR. Neither party may settle with an infringer without the prior approval of the other party if such settlement would affect the rights of the other party under the letters patents.

*Id.* at 1–2.[6]

Pursuant to this Licensing Agreement, Skylite granted Hsin Ten all substantial

---

**6.** Prior to filing this action, Hsin Ten in-

formed Skylite of the infringement and of the

rights under the patent, including the right to sue infringers. The Licensing Agreement unambiguously transferred to Hsin Ten the right to sue, subject only to the obligation to inform Skylite of the infringement. *See Vaupel,* 944 F.2d at 875 (finding that licensing agreement transferred right to sue to licensee even though agreement required that licensee notify licensor of its intention to sue). "This grant is particularly dispositive here because the ultimate question . . . is whether [the licensee] can bring suit on its own or whether [the licensor] must be joined as a party." *Id.* Accordingly, Hsin Ten has standing to sue for patent infringement.

## B. Personal Jurisdiction

■ Personal jurisdiction in a federal court is determined by looking to the law of the forum state. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). The relevant statute here is New York's long-arm statute, N.Y. C.P.L.R. § 302(a) (McKinney's 1990).[7] If jurisdiction is appropriate under state law, a court must then determine whether the exercise of that jurisdiction satisfies the requirements of due process. *See Bank Brussels Lambert,* 171 F.3d at 784.

Hsin Ten contends that this Court has jurisdiction over defendants pursuant to sections 302(a)(1) and 302(a)(2). *See* Pl. Opp. at 9. Because I conclude that jurisdiction is appropriate under section 302(a)(1), I need not address section 302(a)(2).

### 1. CPLR § 302(a)(1)

■ Under section 302(a)(1), jurisdiction is established where the defendant has transacted business within the state, and the claim arises out of that activity. *See Bank Brussels Lambert,* 171 F.3d at 787. This section extends a court's jurisdiction "to any nonresident who has purposely availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* (quotation marks omitted). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state." *Id.* A single business transaction can satisfy this provision, even where the defendant never enters the state, so long as the claim arises from that transaction. *See Haddad Bros., Inc. v. Little Things Mean A Lot, Inc.,* No. 00 Civ. 0578, 2000 WL 1099866, at *6 (S.D.N.Y. Aug. 4, 2000); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 564 (S.D.N.Y.2000).

### a. Clark's Activities in New York

Plaintiff contends that Clark's sales of the Exercise Machines in New York satisfy the "transacts business" requirements of section 302(a)(1). Specifically, the Exercise Machines have been sold in New York through three channels: (1) via the Websites; (2) at trade shows, fairs, mall locations, and clinics; and (3) through referrals. *See* Pl. Opp. at 9.

---

evidence supporting the infringement, thus complying with the requirements of the Licensing Agreement. *See* 12/27/00 Acevedo Decl. ¶ 4. However, Hsin Ten did not ask Skylite to join in the lawsuit. *See id.*

**7.** N.Y. C.P.L.R. § 302(a) provides, in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state . . . .

With respect to the Clark Websites, the Second Circuit has made clear that personal jurisdiction over a defendant is not appropriate simply because the defendant maintains a website which residents of New York may visit. *See Bensusan Corp.,* 126 F.3d at 29. Rather, courts must examine the "nature and quality of commercial activity that an entity conducts over the internet." *K.C.P.L., Inc. v. Nash,* No. 98 Civ. 3773, 1998 WL 823657, at *5 (S.D.N.Y. Nov. 24, 1998) (quotation marks and citations omitted).

Courts considering the issue of when Internet activity provides personal jurisdiction have identified an array of fact patterns. At the lower end of the spectrum are "passive" websites, which primarily make information available to viewers but do not permit an exchange of information. Such websites do not confer personal jurisdiction. *See Citigroup Inc.,* 97 F.Supp.2d at 565 ("[A passive Internet website] has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant."). At the other end of the spectrum are cases in which the defendant clearly does business over the Internet, such as where it repeatedly transmits computer files to customers in other states. *See id.; see also CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). Occupying the middle ground are "interactive" websites, which permit the exchange of information between the defendant and website viewers. *See Citigroup Inc.,* 97 F.Supp.2d at 565; *Student Advantage, Inc. v. International Student Exchange Cards, Inc.,* No. 00 Civ.1971, 2000 WL 1290585, at *4 (S.D.N.Y. Sept. 13, 2000). Generally, an interactive website supports a finding of personal jurisdiction over the defendant. *See, e.g., Citigroup Inc.,* 97 F.Supp.2d at 565 (finding that foreign defendant transacted business in New York when its web-

site allowed New York customers to apply for loans on the Internet, electronically "chat" with an online representative, and e-mail questions to the defendant and receive a rapid response); *Student Advantage, Inc.,* 2000 WL 1290585, at *4 (exercising personal jurisdiction because, in part, defendant's website was interactive).

Clark's Websites enable the viewer to purchase the Exercise Machine online, download an order form, download an application to become an "independent affiliate", and ask questions of an online representative. At the very least, the Websites are highly interactive. *See Student Advantage, Inc.,* 2000 WL 1290585, at *4 (finding that website which permits viewer to purchase product by providing payment and shipping information online constitutes an interactive website). Furthermore, defendants have affiliates who reside in New York, have representatives who have appeared in trade shows in New York, and have sold several Exercise Machines to New York residents. These acts rise to the level of transacting business under § 302(a)(1).

In addition, plaintiff's claims arise out of Clark's business activities. The patent infringement claims arise out of Clark's "use and sale" of the Exercise Machines. *See* Amended Complaint ¶¶ 17, 19. The use and sale of the Exercise Machines is caused, at least in part, by the Websites and the presence of representatives and affiliates in New York. Similarly, the trademark infringement claim arises out of Clark's use of the "Chi" trademark on the Websites. Accordingly, jurisdiction under section 302(a)(1) is appropriate.

### b. Clifford Clark's Activities in New York

█ Plaintiff has not alleged that Clifford Clark, in his individual capacity, has

transacted business in New York. Rather, plaintiff has made jurisdictional allegations which concern only Clifford Clark's business. Therefore, plaintiff has failed to sustain its burden of proving that personal jurisdiction over Clifford Clark is appropriate. Accordingly, the claims against Clifford Clark are dismissed.

### 2. Minimum Contacts

■ The Second Circuit has summarized the due process requirements for exercising personal jurisdiction over a foreign defendant:

> The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In determining whether minimum contacts exist, the court considers "the relationship among the defendant, the forum, and the litigation." To establish the minimum contacts necessary to justify "specific" jurisdiction, the plaintiff first must show that [its] claim arises out of or relates to defendant's contacts with the forum state. The plaintiff must also show that the defendant "purposefully availed" [itself] of the privilege of doing business in the forum state and that the defendant could foresee being "haled into court" there.

*Chew v. Dietrich,* 143 F.3d 24, 28 (2d Cir. 1998) (original alterations and citations omitted).

Clark representatives have appeared in trade shows in New York on its behalf. In addition, Clark has sold the Exercise Machine to New York residents, has independent affiliates in New York, and maintains an interactive Website from which at least one New York resident has purchased the Exercise Machine. By virtue of these business activities in New York, Clark has purposefully availed itself of the privilege of conducting business in New York and should have reasonably anticipated being sued here. Thus, the exercise of jurisdiction over Clark does not offend traditional notions of fair play and substantial justice.

### C. Venue

■ Venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1576 (Fed.Cir.1990). Once an objection to venue has been raised, plaintiff bears the burden of proving that venue is proper. *See G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.,* No. 97 Civ. 0730, 1998 WL 78292, at *2 (S.D.N.Y. Feb. 24, 1998).

### 1. Trademark Infringement

Venue for trademark infringement claims is governed by the general federal venue statute, 28 U.S.C. § 1391(b), which provides in relevant part: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides ... [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

### a. Section 1391(b)(1)

■ With respect to defendant's residence, Hsin Ten argues that although Clark is an unincorporated sole proprietorship with its principal offices in Salina, Kansas, it should be deemed a "corpora-

tion" for venue purposes.[8] *See* Pl. Opp. at 17. If deemed a corporation, then venue is governed by 28 U.S.C. § 1391(c), which provides in relevant part: "For purposes of venue ..., a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

On its face, section 1391(c) applies only to corporations. However, the Supreme Court has held that it also applies to unincorporated associations. *See Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen,* 387 U.S. 556, 562, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967) (extending section 1391(c) to include a labor union). Since then, other courts have held that section 1391(c) is applicable to partnerships and foreign trusts. *See, e.g., Penrod Drilling Co. v. Johnson,* 414 F.2d 1217 (5th Cir.1969) (applying section 1391(c) to partnership); *Kingsepp v. Wesleyan Univ.,* 763 F.Supp. 22, 28 (S.D.N.Y.1991) (holding that section 1391(c) should be interpreted liberally to include a foreign trust such as Dartmouth College); *Injection Research Specialists v. Polaris Indus., L.P.,* 759 F.Supp. 1511, 1515 (D.Col. 1991) (holding that partnership should be viewed like a corporation for purposes of venue); *Pepsico, Inc., v. Board of Trs. of the W. Conference of Teamsters Pension Trust Fund,* No. 87 Civ. 3968, 1988 WL 64869, at *2 (S.D.N.Y. June 13, 1988) (applying section 1391(c) to an unincorporated association).

Although the definition of corporate residence has broadened substantially since the Supreme Court's decision in *Brotherhood of R.R. Trainmen,* courts have been unwilling to expand the definition of "corporation" beyond the general categories outlined above. *See Muenzberg v. Barnes,* No. C 97–1042, 1998 WL 61207, at *2 (N.D.Cal. Feb. 5, 1998) (refusing to expand "the already expansive judicial interpretation of 'corporation' under 1391(c)" to include public entities, such as state subdivisions); *PKWare v. Meade,* 79 F.Supp.2d 1007, 1018 (E.D.Wis.2000) (refusing to expand definition of corporation to include individual defendant). In fact, at least two other federal courts have declined to extend section 1391(c) to include sole proprietorships such as Clark. *See Kabb, Inc. v. Sutera,* No. Civ. A. No. 91–3551, 1992 WL 245546, at *2 (E.D.La. Sept. 4, 1992) ("It is doubtful, however, that Section 1391(c) applies to sole proprietorships."); *Blue Compass Corp. v. Polish Masters of Am.,* 777 F.Supp. 4, 5 (D.Vt.1991) (refusing to apply section 1391(c) to a sole proprietorship).

Hsin Ten argues that Clark is unlike other sole proprietorships because it does business in forty-seven states. Plaintiff contends that Clark "resembles a national corporation in all respects except its choice of legal structure.... An entity such as Clark ..., which obviously enjoys the benefits of doing business on a national scale, should not be granted preferential treatment in venue determinations simply because it chose not to incorporate." Pl. Opp. at 22. Plaintiff's argument is unconvincing.

---

8. The November 3, 2000 oral argument was the first time Hsin Ten argued that venue is appropriate in the Southern District of New York. *See* 11/3/00 Transcript of Oral Argument at 4. Prior to that, Hsin Ten had maintained that venue is more appropriate in the Eastern District of New York. *See* Pl. Opp. at 16–17 ("While this action was filed in the District Court for the Southern District of New York,

the more proper venue for this action is the Eastern District of New York .... [T]herefore, plaintiff respectfully submits that defendants' motion to dismiss for improper venue should be denied and this case should be transferred to the Eastern District of New York."). I nonetheless assume that plaintiff has not waived its assertion of venue in this district.

*First,* broad geographic distribution does not convert a small sole proprietorship into a corporation. With the advent of the Internet and e-commerce, a sole proprietorship can distribute its products throughout the United States with only a relatively minor investment of resources. Moreover, although Clark does business in forty-seven states, it still is not the type of unincorporated business entity that has been included in the definition of corporation. For instance, in *Brotherhood of R.R. Trainmen,* 387 U.S. at 562, 87 S.Ct. 1746, the business entity was a multi-state, unincorporated labor union. *Penrod Drilling Co.,* 414 F.2d at 1223, involved a partnership that was an "industrial goliath"—it employed over seven hundred people and owned twenty-five drilling rigs. *Kingsepp,* 763 F.Supp. at 27, involved an Ivy League university—namely, Dartmouth University. The defendant partnership in *Injection Research Specialists,* 759 F.Supp. at 1515, was one of only four snowmobile manufacturers in the world, had annual sales of over $240 million, and had publicly offered $98 million of Beneficial Assignment Certificates. The unincorporated association in *Pepsico, Inc.,* 1988 WL 64869, at *1, was a multiemployer pension benefit plan. By contrast, between July 8, 1999 and October 17, 2000, Clark sold 1,855 Exercise Machines.[9] Although this is impressive for a sole proprietorship, it is hardly remarkable. Nor does it convert Clark to the functional equivalent of a corporation.

*Second,* expanding the definition of "corporation" would greatly burden sole proprietors. Unlike corporations, partnerships and unincorporated associations—all of which are associations of two or more persons—a sole proprietorship is owned and controlled by a single person. As the Fifth Circuit emphasized: "Venue is primarily a question of convenience for litigants and witnesses and venue provisions should be treated in practical terms." *Penrod Drilling Co.,* 414 F.2d at 1221–22. In practical terms, expanding the definition of "corporation" to include sole proprietorships would be overly burdensome and inconvenient to sole proprietors, most of whom would be unable to afford the expense of litigating in distant states.

### b. Section 1391(b)(2)

 Under section 1391(b)(2), venue is proper for a trademark infringement claim in each jurisdiction where infringement is properly alleged to have occurred. *See Pilates, Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175 (S.D.N.Y.1995).[10] To determine in which district events "giving rise to the claim occurred," a court must first identify the operative facts supporting the claim. *See G.F.C. Fashions,* 1998 WL 78292, at *2.

In a trademark infringement claim, conduct such as attendance at trade shows or enlisting representatives cannot constitute "events or omissions giving rise" to the claim because the claim accrues "wherever confusion is likely to occur—not wherever a defendant may be." *Id.* at *3; *see also D'Anton Jos, S.L. v. Doll Factory, Inc.,* 937 F.Supp. 320, 322 (S.D.N.Y.1996) ("Attendance at trade shows in New York, without more, does not demonstrate suffi-

---

9. The Websites indicate that the price of each Exercise Machine is $299.95. *See* 10/10/2000 Clark Website, Ex. 1 to 10/23/00 Acevedo Decl., at 6. Thus, Clark's revenue since July 8, 1999 from the sales of its Exercise Machines is slightly greater than $550,000.

10. By virtue of a 1990 amendment inserting the language "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," section 1391(b) now permits a plaintiff to sue in more than one venue. *See Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992).

ciently active attempts to market [defendant's] infringing products here."). Rather, "[a] substantial part of events occurs in New York if the defendant targets New York by advertising and actively pursues efforts to market the infringing product here or if the defendant sells a substantial amount of the allegedly infringing goods to customers here." *Id.* at 321; *see also Metropolitan Opera Ass'n, Inc. v. Naxos of Am., Inc.,* No. 98 Civ. 7858, 2000 WL 987265, at *3 (S.D.N.Y. July 18, 2000) (same); *G.F.C. Fashions,* 1998 WL 78292, at *2 (same); *French Transit, Ltd. v. Modern Coupon Sys., Inc.,* 858 F.Supp. 22, 26, 27 (S.D.N.Y.1994) (same). Because plaintiff has not alleged a single sale of the Exercise Machine in the Southern District of New York, venue is only proper here if Clark has directed advertising and pursued efforts to market the Exercise Machine in this judicial district.

Plaintiff's only allegation of advertising or marketing in the Southern District of New York involves Clark's Websites. In deciding whether Clark's Websites satisfy the requirements for venue, this Court should apply the same principles developed to determine whether a website confers personal jurisdiction. *See Metropolitan Opera Ass'n,* 2000 WL 987265, at *3–*4 (relying on cases involving websites and personal jurisdiction to determine proper venue); *Miller v. Asensio,* 101 F.Supp.2d 395, 406–07 (D.S.C.2000) (applying distinction between passive and interactive websites to venue context); *IA, Inc. v. Thermacell Techs., Inc.,* 983 F.Supp. 697, 701 (E.D.Mich.1997) (rejecting defendants' argument that cases involving personal jurisdiction caused by interactive website are inapposite when dealing with venue question).

The guiding principle is that the creation of a website—which by its nature can be viewed anywhere—should not permit suit in every judicial district in the United States. *See Citigroup Inc.,* 97 F.Supp.2d at 567 ("Although it is in the very nature of the internet that the allegedly infringing marks contained in these web sites can be viewed anywhere, this does not mean that the infringement occurred everywhere. . . . A rationale for [this] . . . may be that literal application of the 'where viewed' rule would result in jurisdiction anywhere in the world in every infringement case involving a web site."); *see also GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1350 (D.C.Cir.2000) ("When stripped to its core, GTE's theory of jurisdiction rests on the claim that . . . mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with this forum. . . . This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.").

Following this basic principle, courts have been unwilling to find venue proper where it is based solely on the allegation that the defendant maintains a passive, albeit infringing, website. *See, e.g., Miller,* 101 F.Supp.2d at 406 ("[T]he website in this case is passive, rather than interactive, and thus should not support a finding that venue in this forum is proper."); *Shapiro v. Santa Fe Gaming Corp.,* No. 97 C 6117, 1998 WL 102677, at *2 (N.D.Ill. Feb. 27, 1998) ("[I]t is well-settled that the operation of a toll-free telephone number and a passive, non-advertising website, without more, is insufficient to satisfy jurisdiction or venue."). "The mere fact that a person can gain information on the allegedly infringing product [by viewing a passive website] is not the equivalent of a person advertising, promoting, selling or other-

wise making an effort to target its product in New York." *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2d Cir.1997).

However, "the significance of the web sites shifts to the extent that there is interaction between the [defendant] and New York residents." *Citigroup Inc.*, 97 F.Supp.2d at 567. Courts associate interactive websites with advertising purposefully directed toward the forum state. *See, e.g., IA, Inc.*, 983 F.Supp. at 701 (finding venue proper where misrepresentations that underlie trademark infringement claim are made on an interactive website).

As discussed *supra* Part III.B.1.a, the Websites permit a high level of interactivity between Clark and New York residents. For example, a viewer may purchase the Exercise Machine online, download an order form, download an application to become an "independent affiliate", and ask a Clark representative questions online. Applying the same principles as applied in the personal jurisdiction context, this level of interactivity supports venue over plaintiff's trademark infringement claim in this district.

### 2. Patent Infringement

▇▇ Venue in a patent infringement suit is governed by 28 U.S.C. § 1400(b), which provides that a civil action for patent infringement may be brought either (1) in the judicial district where the defendant resides, or (2) where the defendant has committed acts of infringement and has a regular and established place of business. As discussed *supra* Part III.C.1.a, Clark does not reside in New York. Accordingly, venue for the patent infringement claim is appropriate only if Clark has committed acts of infringement and has a regular and established place of business in this district.

Clark does not satisfy the requirements of the second test under section 1400(b).[11] Even assuming that Clark has committed acts of patent infringement in the Southern District of New York, Clark does not have a regular and established business in any judicial district in New York. *See* Clark Aff. ¶ 6 ("[Clark] do[es] not maintain a place of business within the Southern District of New York, or indeed within the entire State of New York."). "A 'regular and established place of business' involves more than 'doing business,' and the mere presence of a sales representative is not sufficient." *Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976, 987 (S.D.N.Y. 1992). Rather, "[a] defendant must be regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." *Id.* (quotation marks omitted). Although Clark has affiliates in New York and has had representatives at trade shows in New York, these facts do not establish that it has a "regular and established place of business" in New York. *See id.* ("[Defendant's] attendance at the trade show, as well as his other trips to New York, do not meet the standards of a 'regular and established place of business' under the patent venue statute."). Accordingly, plaintiff's patent infringement claim is not properly venued in this district.

---

**11.** Plaintiff concedes as much in its memorandum of law, which does not seek to establish venue under the second test of section 1400(b). *See* Pl. Opp. at 24. Rather, plaintiff rests solely on its contention—already rejected by the Court, *see supra* Part III.C.1.a.—that Clark should be deemed a corporation that resides in any district in which it is subject to personal jurisdiction.

## D. Pendent Venue [12]

▮▮▮▮ Generally, venue must be established for each separate claim in a complaint. *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,* 927 F.Supp. 731, 736 (S.D.N.Y.1996). However, courts have increasingly recognized the doctrine of "pendent venue", derived from the concept of pendent jurisdiction. *See, e.g., Beattie v. United States,* 756 F.2d 91, 101 (D.C.Cir.1984) ("The doctrine of 'pendent venue' is now well established, particularly in cases where the court has previously exercised its discretion to hear a certain claim under pendent jurisdiction."). Under the doctrine of pendent venue, "a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie." *Banfield v. UHS Home Attendants, Inc.,* No. 96 Civ. 4850, 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997). In making its decision, a court must consider factors such as "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants." *Id.* (citing *Rodriguez v. Chandler,* 641 F.Supp. 1292, 1302 (S.D.N.Y.1986)).

### 1. Pendent venue over the state law claims

▮▮▮▮ "The doctrine of pendent venue is ordinarily employed where venue is lacking for a state law claim that arises from the same nucleus of operative facts as a 'properly venued' federal claim." *Garrel v. NYLCare Health Plans, Inc.,* No. 98 Civ. 9077, 1999 WL 459925, at *4 (S.D.N.Y.

June 29, 1999). Courts within this circuit routinely exercise pendent venue over state law claims in such situations. *See, e.g., Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc.,* No. 98 Civ. 4132, 1999 WL 76803, at *5 (S.D.N.Y. Feb. 17, 1999); *Banfield,* 1997 WL 342422, at *2; *Topolnycky v. Ukrainian Sav. & Loan Ass'n,* No. Civ.–90–878E, 1991 WL 117397, at *2 (W.D.N.Y. June 12, 1991); *Fox–Rich Textiles, Inc. v. Malden Mills Indus., Inc.,* No. 89 Civ. 0773, 1989 WL 140246, at *3 (S.D.N.Y. Nov. 13, 1989).

Here, the state law claims—for unfair competition under New York common law and deceptive acts and practices under the New York General Business Law—arise out of defendants' use of the "Chi" mark. These claims, therefore, arise out of the same nucleus of operative fact as the trademark infringement claim. Accordingly, the exercise of pendent venue over plaintiff's state law claims is appropriate.

### 2. Pendent venue over the patent infringement claim

▮▮▮▮ The exercise of pendent venue over federal claims involves a different analysis than the exercise of pendent venue over state law claims:

Where . . . a party advocates exercise of pendent venue over an additional federal claim which is subject to its own specific venue provisions, courts have generally taken one of two approaches. *First,* some courts have found that the more specific venue provisions control, and have required that the case be brought in a venue which satisfies the more specific statute. *Second,* following an approach developed by courts in the Dis-

12. Nowhere in its memorandum of law did plaintiff ask the Court to apply the doctrine of pendent venue. However, after oral arguments in this case, Clark submitted a supplemental letter stating that if "the Court determines that venue is proper for the trademark claim[ ] but improper as to the patent claims, . . . the issue of pendent venue would be presented." 11/8/00 Letter from defendants' counsel Arlen L. Olsen at 1–2.

trict of Columbia Circuit, some courts determine which of the two federal claims is the "primary" claim, and apply the venue statute applicable to that claim.... [I]t is apparently a question of first impression in this Circuit which, if either, of the two approaches described above is the proper method to analyze pendent federal venue claims. *Garrel,* 1999 WL 459925, at *5.

Utilizing the second approach, the exercise of pendent venue over plaintiff's patent infringement claim makes sense because the "primary" claim appears to be the trademark infringement claim. Hsin Ten is principally aggrieved by Clark's use of plaintiff's mark to promote the Exercise Machines. Plaintiff also alleges that Clark has infringed patents over which plaintiff has an exclusive license. Of the five claims asserted in the Amended Complaint, three claims concern the use of the "Chi" trademark. At best, the patent and trademark infringement claims are of equal importance.

Furthermore, there is substantial overlap in the proof of the patent and trademark infringement claims. For instance, to prove its trademark infringement claim, Hsin Ten must demonstrate a likelihood of confusion between plaintiff's mark and Clark's mark. To satisfy the eight-factor likelihood of confusion test of *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961), plaintiff will introduce evidence concerning the competitive proximity of plaintiff's and Clark's products,[13] the quality of defendant's product, defendant's bad faith in adopting the mark, and the existence of actual confusion in the market. Such proof may include evidence

that Clark willfully copied plaintiff's designs and patents over which plaintiff has an exclusive license. Accordingly, the interests of judicial economy, fairness to the litigants, and avoidance of piecemeal litigation compel the exercise of pendent venue over plaintiff's patent infringement claim.

There is no question that most of the courts that have addressed this issue have refused to exercise pendent venue over a federal patent claim governed by section 1400(b). *See, e.g., PKWare,* 79 F.Supp.2d at 1019; *Johlar Indus., Inc. v. Essex Eng'g Co., Inc.,* No. 87 C 9013, 1988 WL 71222, at *3 (N.D.Ill.1988); *Zin–Plas Corp. v. Plumbing Quality AGF. Co.,* 622 F.Supp. 415, 422 (W.D.Mich.1985); *Network Sys. Corp. v. Masstor Sys. Corp.,* 612 F.Supp. 438 (D.Minn.1984); *Hoffacker v. Bike House,* 540 F.Supp. 148, 150 (N.D.Cal.1981); *Goggi Corp. v. Outboard Marine Corp.,* 422 F.Supp. 361, 366 (S.D.N.Y.1976). Nonetheless, there is good reason to depart from these persuasive, but non-binding authorities.

*First,* no appellate court has held that pendent venue is *never* appropriate over a patent infringement claim. *Second,* a number of the cases rejecting pendent venue over patent claims are easily distinguished. In several of those cases, the plaintiff attempted to "ferryboat in" the patent claim by joining less important federal claims or state law claims which were properly venued. *Johlar Indus.,* 1988 WL 71222, at *3; *see also Network Sys. Corp.,* 612 F.Supp. at 440; *Hoffacker,* 540 F.Supp. at 149. Unlike the present case, the primary claims in those cases were the patent infringement claims, which were brought in inappropriate districts under

---

**13.** Under the "competitive proximity" factor, a court considers whether the two products compete with each other. "To the extent goods ... serve the same purpose, fall within the same general class, or are used together,

the use of similar designations is more likely to cause confusion." *W.W.W. Pharm. Co., Inc. v. Gillette Co.,* 984 F.2d 567, 573 (2d Cir.1993).

section 1400(c). *Third,* at the time of these rulings the patent venue statute was highly restrictive with respect to the appropriate venue:

> This special venue statute [28 U.S.C. § 1400(b)] reflects a Congressional awareness of the technical nature of patent litigation and the particular advantage in limiting its prosecution to forums where the acts of infringement occurred and where the defendant is located.... Recognizing the specific character of the patent venue statute, the Supreme Court has held that venue in infringement actions is governed exclusively by section 1400 and that parties will not be permitted to circumvent this specific venue rule by satisfaction of the general venue statute. *Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); *Stonite Prods. Co. v. Melvin Lloyd Co.,* 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942).

*Hoffacker,* 540 F.Supp. at 149.

The 1988 amendment to section 1391(c)—the general venue statute governing corporations—significantly changed the legal landscape surrounding section 1400(b). Prior to that amendment, a patent infringement claim against a corporation could only be brought in the district of the defendant's state of incorporation. *See In re Cordis Corp.,* 769 F.2d 733, 735 (Fed.Cir.1985). However, in 1990, the Federal Circuit Court of Appeals held that when Congress amended section 1391(c), it intended to amend section 1400(b) as well. *See VE Holding Corp.,* 917 F.2d at 1584.[14] The court held that section 1400(b) now permitted suit in any district in which the defendant corporation was subject to personal jurisdiction at the time the action was commenced.[15] The restrictive view of section 1400(b) is no longer an appropriate reading of the patent venue statute.[16] Although the reach of section 1400(b) is not co-extensive with that of the general venue statute, section 1400(b) is a much broader statute today than it was when most courts held that pendent venue cannot be exercised over a patent infringement claim. Therefore, pendent venue is permitted over patent claims where the claim that is properly venued in the forum is a substantial or primary claim, and the exercise of pendent venue would result in judicial efficiency, convenience to the parties, and would avoid piecemeal litigation.

**E. Transfer of Venue**

 Hsin Ten has requested that this case be transferred to the Eastern District of New York. Plaintiff maintains that the Eastern District of New York is the more appropriate venue because plaintiff resides in that district and there are two actions, both of which involve the same patents and

---

14. All of the cases, with one exception, that have rejected pendent venue over a patent infringement claim preceded the Federal Circuit's decision in *VE Holding.* Although *PKWare,* 79 F.Supp.2d at 1019, postdated *VE Holding,* that court relied solely on cases that preceded *VE Holding.*

15. Many of the courts that have refused to permit pendent venue over a claim of patent infringement have expressly relied on the Supreme Court's decision in *Fourco Glass. See, e.g., Johlar Indus.,* 1988 WL 71222, at *3; *Network Sys. Corp.,* 612 F.Supp. at 440; *Hof-*

*facker,* 540 F.Supp. at 149; *Goggi Corp.,* 422 F.Supp. at 365. However, following the 1988 amendment to section 1391(c), the *Fourco* decision is no longer good law. *See VE Holding,* 917 F.2d at 1579.

16. "With the enactment of liberalized general venue laws, the patent venue statute has long since outlived its original purpose. The continued existence of the patent venue statute serves only to prolong patent litigation and make it more expensive." *VE Holding,* 917 F.2d at 1583.

trademark involved in this suit, currently pending in the Eastern District of New York. *See* Pl. Opp. at 16–17.[17]

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." The burden is on the moving party "to make a clear and convincing showing that 'transfer will serve the interests of convenience and fairness.'" *NBA Props. v. Salvino, Inc.*, No. 99 Civ. 11799, 2000 WL 323257, at *3 (S.D.N.Y. Mar. 27, 2000) (citations omitted). The movant must support its motion with a detailed factual affidavit. *See Nabisco, Inc. v. Brach's Confections, Inc.*, No. 00 Civ. 5875, 2000 WL 1677935, at *1 (S.D.N.Y. Nov. 8, 2000).

 "A motion to transfer venue is not ordinarily granted at the request of the party who chose the forum in the first place." *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F.Supp.2d 146, 152 (S.D.N.Y. 2000) (quotation marks omitted). Therefore, a plaintiff moving to transfer must demonstrate that, since the action was filed, there has been a change of circumstances which warrants transfer of venue. *See id.; see also Crane v. Metro–North*

*Commuter R.R.*, No. 87 Civ. 2876, 1989 WL 74954, at *3 (S.D.N.Y. June 26, 1989).

*First,* plaintiff has not submitted an affidavit in support of its transfer request. *Second,* plaintiff has not alleged any change of circumstances warranting transfer of this suit. Indeed, as the plaintiff in all three suits, Hsin Ten could control where each action was filed. Hsin Ten chose to file this action in the Southern District of New York even though it could have filed it in the Eastern District of New York. Accordingly, plaintiff's request to transfer venue is denied.[18]

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss for lack of personal jurisdiction and improper venue is granted in part and denied in part. The claims against Clifford D. Clark are dismissed. A pretrial conference is scheduled for January 16, 2001 at 4:30 p.m.

SO ORDERED.

---

17. Although a court may not consider facts raised only in the parties' memoranda of law, *see Pall Corp. v. PTI Technologies, Inc.*, 992 F.Supp. 196, 202 (E.D.N.Y.1998), it may take judicial notice of the pendency of the two actions in the Eastern District of New York. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). The other two actions are *Hsin Ten Enter. USA, Inc. v. Home Shopping Network*, No. 00 Civ. 0213 (E.D.N.Y. filed Jan. 12, 2000) and *Hsin Ten Enter. USA, Inc. v. Celeb-*

*rity*, No. 00 Civ. 5094 (E.D.N.Y. filed Aug. 23, 2000).

18. In its reply memorandum of law, defendant requests that "if the Court feels the case should be transferred in the interest of justice, Defendant respectfully requests the case to be transferred to the United States District for the District of Kansas." Def. Reply Mem. at 7–8. However, Clark has not moved for a transfer under 28 U.S.C. § 1404. A one sentence request, appearing for the first time in a reply memorandum of law and unsupported by an affidavit, will not be construed as a motion to transfer venue.